# CHARLESTON.

## MARTIN v. MARTIN.

Submitted January 17, 1890—Decided March 22, 1890.

1. DIVORCE—CROSS-BILL—DESERTION.

Where a wife files a bill for divorce and alimony against her husband, if, at the time of the institution of the suit three years had not elapsed since she left her said husband, and during the pendency of said suit said period does elapse, counting from the date of such desertion, the defendant may file a cross-bill alleging that such desertion was wilful, and had continued for three years; and, if the allegations of said cross-bill be sustained by the proof, he may be decreed a divorce from the plaintiff.

2. DIVORCE—DESERTION—ALIMONY.

Where a wife leaves her husband without good legal cause, she is not entitled to alimony.

3. DIVORCE—DESERTION.

The reasonable or justifiable cause, which will warrant a wilful separation and refusal to return to the home of her husband,

must be such as would authorize a suit for divorce *a mensa et thoro*.

*Watts & Ashby* for appellant.

No appearance for appellee.

English, Judge:

This was a suit in equity, brought in the Circuit Court of Clay county, by Christina Martin, against her husband, Samuel V. Martin, on the 14th day of December, 1886, to obtain a divorce *a vinculo matrimonii*, for alimony *pendente lite*, and for permanent alimony. She alleges in her bill that she and defendant were lawfully married, and that they lived together as man and wife, for some years, in peace and concord, she at all times endeavoring to fully discharge her duties as a wife and companion of said defendant; that she is now living separate and apart from her husband, and that, for several years before the separation, said defendant, forgetting and neglecting his duties and vows as a husband, engaged in a round of adulteries, and committed various acts of adultery with different women; that for some years past the said defendant has become cross, ill, and cruel to her, threatening her with violence to such an extent that she was afraid to live with him, and for that reason left his home, since which time said defendant has threatened her with further violence, and even to kill her, if she came back, or returned to her home; that, at the time of filing her bill, she had been absent from her husband's home about twelve months, and had to get her support from her children during that time; that she is neither able to support herself, nor to prosecute said suit for divorce and alimony; that the defendant was in good circumstances, owning valuable real and personal estate, and well able to provide a comfortable support and living for plaintiff; that said acts of adultery complained of had been committed in the last five years, and some of them quite recently; that she and defendant last lived together in the county of Clay, aforesaid, and that she still lives in said county; and she prays for a divorce from the bonds of matrimony, and for alimony.

Several depositions were taken in the cause by both plaintiff and defendant.

On the 11th day of September, 1888, the defendant answered said bill, admitting his marriage with plaintiff, and that they lived together as man and wife until July or August 1, 1885, but denied that their domestic life was one of peace and concord, and alleging that during the greater time of their living together the plaintiff was quarrelsome, abusive, and continually failed to discharge her duties as a wife. He denied the charge of adultery contained in plaintiff's bill. He also denied any acts of cruelty towards plaintiff, or that he ever threatened her with rudeness and violence, so as to make plaintiff afraid to live with him, and thus caused her to leave his home. He also denied that since her desertion he had threatened her with further violence, or that he threatened to kill her if she came back, or returned to her home ; and he further alleged that at the time his said answer was filed she had been absent, living apart from defendant, more than three years, at all times refusing to return, although often solicited so to do. He also denied that he was in good circumstances, but claimed that at the time of her desertion he owned a tract of 350 acres of upland, of ordinary quality, in Clay county, but that trouble, mental vexation, and continual worry, resulting from plaintiff's unkind and unwifely treatment, caused him to sell said land to his son-in-law, Presly Donahoo, who is now the sole owner thereof, and that he (defendant) is the owner of no other property, real or personal.

On the same day said defendant filed a cross-bill, to which the plaintiff, by her attorney, appeared *gratis*, and waived service of process, and replied generally to said answer. In said cross-bill, said S. V. Martin stated, in substance, the original proceedings in this cause, and alleged that, at the time of his marriage with plaintiff, she had two children, the fruits of an adulterous commerce between said plaintiff and himself, and he was induced to marry the plaintiff by an earnest wish on his part to legitimize, under the laws of the state, these two children born to them prior to said marriage ; that, after said marriage, said plaintiff made his home miserable beyond description by her bad temper, treachery, and unwifely conduct, and, although he provided well for her, and treated her kindly, she wilfully abandoned his

home in August, 1885, and has since that time committed numerous adulteries with various parties ; and he prayed that a divorce from the bonds of matrimony be granted him from the said Christina Martin.

On the 12th day of December, 1888, said cause was heard upon the bill and answer and replication, and upon the cross-bill filed by the defendant, depositions and exhibits filed, and a decree was rendered granting a divorce from the bonds of matrimony existing between plaintiff and defendant ; and it was further decreed that the defendant do pay to and for the maintenance of the plaintiff the sum of $40.00 annually from the 14th day of December, 1887, during the lifetime of said plaintiff, with interest from the 14th day of December of each year ; also, that said defendant pay the costs of the suit, including a statute fee of $20.00 for her attorney ; which sum of $40.00, then due, and the said annual payments therein decreed in favor of plaintiff, were made a lien upon all real estate then owned, or thereafter to be acquired, by the defendant, and leave was given the plaintiff to sue out execution against said defendant to enforce the collection of same, when they became due ; and from this decree the defendant obtained an appeal to this Court.

The only allegation made in the plaintiff's bill which would entitle her to the decree complained of is that of adultery, and the only proof in support of this allegation is the testimony of the plaintiff herself. When asked, in the eighth question, "State where is the defendant, S. V. Martin, now living, and under what circumstances did he leave," she answered : "He is living in Charleston, Kanawha county, West Va. He left with another man's wife, and took her where he now lives—the woman with whom he had been too intimate before he left with her, and before I left." But when she was asked, on cross-examination, "State, if you please, how you came by the knowledge that the defendant had taken another man's wife, and left with her, after you left," she answered, "It was a general report of the neighborhood, and the defendant, S. V. Martin, told me so himself, and said he took her, for he intended to go with her," and, when asked to state what the defendant's character and habits were as to chastity and correct conduct—whether he

was faithful to his marriage vows, or otherwise—she answered: "He is not now. This from what I heard, and what I actually seen, and what he told me." She thus bases her conclusions upon the general report of the neighborhood, and what she heard, and what she actually saw, and what he told her. She, however, does not state what she heard, what she saw, or what he told her. Her evidence proves no fact which came under her own observation, or which was admitted by her husband, which would sustain the charge of adultery. The allegation made in her bill, "that for some time, and for several years, before the separation, the defendant, forgetting and neglecting his duties as a husband, engaged in a round of adulteries," shows that she had lived with him subsequently, and condoned the offence; and, even if the statements of her husband, of which she speaks, be accepted as evidence, she condoned his intimacy with the other man's wife, of whom she speaks, by living with him after knowledge of the fact. It is true that plaintiff alleges subsequently in her bill that the "acts of adultery above referred to have been committed within the last five years, and some of them quite recently." She does not, however, state any of said delinquencies on the part of the defendant occurred since the separation; and they must be regarded as condoned, also. In answer to question eight, the plaintiff states as follows: "He is living in Charleston, Kanawha county, W. Va. He left with another man's wife, and took her where he now lives—the woman with whom he had been too intimate before he left with her, and before I left." Now, she nowhere states that her husband told her he had ever committed adultery with this other man's wife. She simply says her information was derived from neighborhood report, and the defendant told her himself he took her, for he intended to go with her. She does not even state, from neighborhood report, or from information derived from the defendant, that he was living with said other woman in Kanawha county, but simply states that he is living in Kanawha county, W. Va., and took her where he now lives. For what purpose, she does not state, nor does she state anything which would amount to an act of adultery on the part of defendant; and it can

not be considered that said charge has been sustained by the evidence. In order to sustain a bill for divorce upon the charge of adultery, the proof should be full and satisfactory ; and we do not think the evidence in this case comes up to that standard.

The second error complained of by appellant is that of decreeing alimony to the plaintiff during her lifetime. When we look for the definition of "alimony," we find that Bouvier defines it as follows : "Permanent alimony is that ordered for the use of the wife after the termination of the suit during their joint lives." And again he says : "As the husband is only bound to support his wife during his own life, her right to alimony ceases with his death (2 Bish. Mar. & Div. § 428 ; *Lockridge* v. *Lockridge*, 3 Dana, 28 ; *Smith* v. *Smith*, 1 Root, 349 ; *Sloan* v. *Cox*, 4 Hayw. (Tenn.) 75) ; and, as it is a maintenance for the wife living separate from her husband, it ceases upon reconciliation and cohabitation." And 2 Bish. Mar. & Div. § 351, note 1, says : "Alimony is maintenance afforded to the wife, where the husband refuses to give it, or where his improper conduct compels her to separate from him. It is not a portion of his real estate, to be assigned to her in fee-simple, subject to her control, or to be sold at her pleasure, but a provision for her support, to continue during their joint lives, or so long as they live separate." See *Wallingsford* v. *Wallingsford*, 6 Har. & J. 485 ; *Parsons* v. *Parsons*, 9 N. H. 309 ; *Clark* v. *Clark*, 6 Watts & S. 85. In the light of these authorities, it is clear the court erred in decreeing permanent alimony to the plaintiff at the rate of $40.00 per annum during the lifetime of said plaintiff. Again, we find it was held in the case of *Carr* v. *Carr*, 22 Gratt. 168, that a wife, having left her husband without good legal grounds, is not entitled to alimony ; referring to Bish. Mar. & Div. 564, and *Boggess* v. *Boggess*, 4 Dana, 307 ; and, as the evidence in the case under consideration does not show any legal grounds or just cause for the action of the plaintiff in leaving the home of the defendant, she was not entitled to alimony, under the rulings aforesaid.

At the time the original bill was filed by plaintiff, the period of three years had not elapsed since the said plaintiff left the home of the defendant ; and, when that time did

elapse, he found it necessary to file his cross-bill, in order to then allege wilful abandonment and desertion of himself by the plaintiff for three years as a ground for divorce from said plaintiff. Barton, in his Chancery Practice (volume 1, p. 301, § 101) upon the subject of "Cross-Bills," says: "This bill lies, among other instances, in the following cases: * * * Where a matter of defence arises after the cause is at issue to answer the purpose of a plea *puis darrien continuance* at the common law." See, also, Story, Eq. Pl. § 393. This cross-bill was filed by said defendant for the purpose of obtaining relief which he could not have obtained by an answer in the original suit, because, at the time said suit was brought, the circumstances did not exist which would entitle him to relief, to wit, the wilful abandonment and desertion of his home and himself by the plaintiff for three years; and this made a cross-bill necessary in order that this might be alleged, and full relief might be granted the plaintiff in said cross-bill touching the matters of the original bill. See *Oil Land Co.* v. *Vinal*, 14 W. Va. 637. Under section 8 of chapter 64 of the Code, it is provided that such suit shall be instituted and conducted as other suits in equity, except that the bill shall not be taken for confessd, *etc.*

The defendant, in his cross-bill, alleges and relies upon two grounds for a divorce from the bonds of matrimony, which he prays may be granted him, to wit, the wilful abandonment and desertion, without reasonable cause, of his home and himself, in August, 1885, by plaintiff, and also the commission of numerous adulteries with various parties. This last ground is entirely unsupported by the evidence. As to the first ground alleged, in order that we may ascertain whether the same has been sustained by the evidence in the cause, we must look, first, to the legal interpretaion of the words "desertion" and "abandonment," as used in connection with the law of divorce. CHRISTIAN, J., in 21 Gratt. 47, delivering the opinion of the court in *Bailey* v. *Bailey*, says: "Desertion is a breach of matrimonial duty, and is composed— *First*, of the actual breaking off of the matrimonial cohabitation; and, *secondly*, an intent to desert in the mind of the offender. Both must combine to make the desertion complete. The intent to desert is usually the principal thing to

be considered." In the case of *Carr* v. *Carr*, 22 Gratt. 172, the court, in its opinion, quotes from the case of *Bailey* v. *Bailey*, with approval, as follows : "We think it may be safely asserted as a general principle of law to be extracted from the English and American cases on the subject, that wherever there is an actual breaking off of matrimonial cohabitation, combined with the intent to desert in the mind of the offender, in such case desertion is established, and the party deserted is entitled to a divorce *a mensa et thoro.*" And this Court has held, in the case of *Burk* v. *Burk,* 21 W. Va. 445, that "desertion is a breach of matrimonial duty, and is composed —*First,* of the breaking off of the matrimonial cohabitation ; and, *second,* an intent to desert in the mind of the offender. Both must combine to make the desertion complete." And in the case of *Alkire* v. *Alkire, ante,* 11 (recently decided by this Court) it is held that "desertion, in divorce law, is the voluntary separation of one of the married parties from the other, or the voluntary refusal to renew a suspended cohabitation, without justification either in the consent or the wrongful conduct of the other."

Looking, then, to the evidence in the case, with a view of applying the same to the law, we find that Presly E. Donahoo, a witness called by said Samuel V. Martin, in answer to a question asked him, states: "I have heard the plaintiff say several times that she intended to leave, and never intended to come back any more, and that she would make him come, and get down on his knees, and cry and beg, if she did come back, and that he had done the like before ; and when she left I was present, and she went to Laurel, to a meeting ; and when she left she appeared to be in a good humor, and said she would be back Monday ; and she has not returned yet ; and the defendant, S. V. Martin, was present, and furnished her a horse to go away on, and did not drive her off. They both appeared to be in a good humor." James W. White was asked : "State whether the defendant procured you to visit his wife after she left ; and, if so, state what he said to tell her, and what she told you in return to his compliment," and answered: "He said he expected he would have to get me to go after his wife, and I told him I could not go then ; and I saw her as many as

three or four times, and she told me she was not coming back any more." And P. H. Holcomb says he carried a note to her from defendant, which read as follows : "Christina Ann Martin : You will please come home to my new house, for I wish to take care of you as long as you live; or, if you won't live with me, I will have you taken care of the best I can on my own farm. (Signed) S. V. MARTIN." And the plaintiff said she did not have to come home, to be poisoned to death. The weight of the evidence in the cause is that said plaintiff was continually quarreling with the defendant; that she was well and comfortably provided for while she remained with the defendant; and that when she left she was riding one of the defendant's horses, and both parties seemed to be in a good humor. Her subsequent conduct, however, can leave no room for doubt that she left with the intention of deserting and abandoning her home and her husband. In assuming the marriage relation, it is understood that the contracting parties do so fully aware of the frailties and imperfections of human nature, and conscious of the fact that mutual forbearance must be practiced to enable them to pursue pleasantly the journey of life as companions ; each party undertaking to overlook moral wrongs and infirmities in the other. The best interests of society, decency, and morality combine in demanding that the obligations taken upon themselves by the parties who enter into the marriage contract should not be abandoned and disregarded upon the mere whim or caprice of either party, or upon slight cause, real or imaginary; but the cause which will justify such abandonment or desertion must be confined and regulated by legal limits, if we would avoid social anarchy, free-loveism, and its natural consequences. To guard society against these evils, the law has prescribed well-defined limits and restrictions, and does not allow either party, for slight cause, to abandon or desert the other, but it must be reasonable cause which justifies such desertion or abandonment; and what I understand by "wilful desertion" is the intentional cessation of cohabitation without such reasonable cause. In Pennsylvania, it has been held that the reasonable cause which, within the divorce statutes of the state, would justify one of the married parties

in leaving the other must be such conduct as could be made the foundation of a judicial proceeding for divorce. *Butler* v. *Butler*, 1 Pars. Eq. Cas. 329. And in the case of *Carr* v. *Carr*, 22 Gratt. 168, the court held: "That a husband is rude and dictatorial in his speech to his wife, exacting in his demands upon her, and sometimes unkind and negligent in his treatment of her, even when she was sick, and worn, and weary, in watching and nursing their sick child, is no legal grounds for her leaving him." In the case of *Alkire* v. *Alkire*, *supra*, this Court held that "the wrongful conduct or justifiable cause which will warrant a wilful separation, or continance of it, must be such as could be made the foundation of a judicial proceeding for a divorce *a mensa et thoro.*" Bishop, on Marriage and Divorce, in discussing this subject, says (volume 2, § 88): "Therefore, following analogies to various propositions which have been discussed in earlier parts of these volumes, the rule should be that the misbehavior of the plaintiff, to be an absolute bar, must be of a nature to render it a sufficient legal cause for at least a judicial separation." Owing to the diversity of human character, and the variety existing in the degrees of culture, refinement, and sensibility of different parties, the causes which would be regarded as insufferable cruelty by one might be utterly disregarded by another. Hence the necessity has arisen for determining, by some fixed standard, when wilful desertion and abandonment, without reasonable cause, exists, and this criterion must be found in the rulings of the courts which determine the law upon the subject.

Applying these rulings to the facts proven in the case at bar, I am led to the conclusion that the plaintiff, Christina A. Martin, is not entitled to the relief prayed for in her bill, and that the decree complained of must be reversed, and her bill dismissed; but I am of opinion that said Samuel V. Martin, the defendant, is entitled *to the relief prayed for in his cross-*bill, and a *divorce a vinculo matrimonii* is decreed to him; and the plaintiff, Christina Martin, must pay the costs of this appeal, and the costs incurred in the Circuit Court.

REVERSED.    DISMISSED.