### EMILY C. LYON *et al.*

*v.*

### THE HAMMOND AND BLUE ISLAND RAILROAD COMPANY.

*Filed at Ottawa June 8, 1897—Rehearing denied October 12, 1897.*

1. EVIDENCE—*condemnation—what not admissible on question of damages.* In proceedings by a railway company to condemn for right of way, testimony as to the price paid to the defendant by another railway company for a strip of land through the same tract is not admissible upon the question of damages.

2. TRIAL—*improper remarks of counsel—when allowed to stand.* An attorney who, instead of objecting to remarks of his opponent upon matters wholly outside the evidence, challenges him to a discussion of such matters and enters into the discussion himself, cannot complain of the refusal of the trial court to strike out such opponent's remarks.

3. EMINENT DOMAIN—*effect of stipulation by petitioner to perform certain acts.* The filing in court of a stipulation by a petitioner in condemnation, by which it agrees to do certain things which will reduce the injury to property not taken, subjects the estate acquired by the condemnation judgment to a condition of a perpetual and binding character, which cannot be evaded or denied.

4. ESTOPPEL—*when party is estopped to deny effect of his stipulation.* A petitioner in condemnation who files a stipulation agreeing to do certain acts, and by his instructions given by the court construes such stipulation as a covenant running with the land, on which basis the damages are assessed, will never be permitted to deny the effect of the stipulation under his own construction.

5. APPEALS AND ERRORS—*condemnation verdict rendered on conflicting evidence will not be disturbed.* A condemnation verdict rendered on conflicting evidence by a jury who viewed the premises will not be disturbed if within the range of testimony, unless it is clear that injustice has been done, as a result of passion and prejudice.

APPEAL from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

GOODRICH, VINCENT & BRADLEY, for appellants.

WINSTON & MEAGHER, (JAMES F. MEAGHER, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Emily C. Lyon, one of the appellants, owns five hundred and twenty acres of land in Thornton township, in Cook county, and John B. Lyon, the other appellant, is her husband. Appellee filed its petition in the circuit court of that county to condemn a right of way across said tract. At the trial it was stipulated by the parties that the land taken amounted to twelve and eighty-three hundredths acres. The jury heard the evidence and examined the premises themselves, and their verdict was for $5773.50. Judgment was entered upon this verdict.

It is complained that the court allowed petitioner's civil engineer to testify that the road was built for a belt road, and to give its connections with other railroads. Some of these connections were in Indiana, and the objection is that no charter from the State of Indiana, authorizing the construction of the road in that State and showing the *termini* under such charter, was introduced in evidence. The witness testified that he was the civil engineer in charge of the construction, that nearly all of the road was graded and constructed, and that a portion of the tracks was laid. He did not testify as to chartered powers, and we see no objection to his stating existing conditions and connections made with other railroads.

Another complaint is, that the court refused to allow defendant John B. Lyon to testify to the price paid defendants by the South Chicago and Southern Railroad Company for a strip of land one hundred and three feet wide for a right of way on the south side of part of the tract of land across which the right of way in this case was being condemned. The rule is, that a petitioner can not prove what it has paid other property owners for right of way along the same road. (*Peoria Gas Light Co.* v. *Peoria Terminal Railway Co.* 146 Ill. 372; *Kelliher* v. *Miller,* 97 Mass. 71; Lewis on Eminent Domain, sec. 447.) The converse of the proposition must be true, for if defendants had proved what the other company paid for right of way, the court could not refuse to let petitioner prove what it had paid for right of way across lands in the vicinity. In neither case would the sale be a fair test of market value. The amount paid includes any damages that may be claimed to the residue of the land owner's premises, and often does not represent the mere market value of the portion sold. It would make no difference that the South Chicago and Southern Railroad Company had not yet filed a petition to condemn the right of way purchased from defendant. The preliminary efforts of a corporation having power to take the land, to agree with its owner upon the amount it must pay, are upon no different basis than settlements, where it has undertaken to exercise such right.

The next thing that occurred on the trial of which complaint is made is, that the court erred in allowing counsel for petitioner to make improper arguments and statements to the jury. The record shows that, after the evidence was in, petitioner's counsel, in his opening argument, referred to the attempt to prove what the other railroad company paid defendants for right of way on the south side of the tract, and said that the company was "held up," and that was the kind of sale they wanted to prove. This was improper and without excuse, and if

167—34

objection had been made, or if the judge had noticed it without objection, he would certainly have rebuked the counsel and counteracted the effect of the statement as far as possible. But defendants' counsel apparently preferred to meet the statement with his own assertion in argument, and made no objection. Accordingly he went into the subject in his argument, and told the jury what he had wanted to prove and what he knew about the sale, but that petitioner's counsel would not let him prove the facts. He then asked petitioner's counsel on what authority he said that the railroad company was "held up." The counsel replied, "Wait until I come to answer you, and I will tell you to the satisfaction of the jury." Defendants' counsel told him to answer it, and that if he could show, by any evidence, any authority for what he had said, counsel would like to investigate "that whole thing." In the closing argument petitioner's counsel, in reply, undertook to demonstrate that the South Chicago and Southern Railroad Company had no right to con demn the strip at right angles with its road for a spur track, and that, having no right to condemn, it had to pay whatever defendants asked. This was objected to, and the court declined to rule it out, saying, "Let it go," but petitioner's counsel said that he withdrew his statement. Perhaps the withdrawal did not help matters any, but what was said was in response to a direct statement by defendants' counsel and a challenge to discuss a matter wholly outside of the evidence. As defendants' counsel did not see fit to have the rules enforced, but engaged in the discussion, we do not think he can complain that the court refused to strike out the reply made to him.

It is also contended that the court erred in giving and refusing instructions. The defendants asked the court to give the following instruction, which was refused:

"The jury are further instructed, that in estimating the damages, if any, to the remainder of the property of the respondents not taken, you are not to take into con-

sideration any benefits by reason of the extra facilities of transit or railroad privileges which, in your opinion, do not actually increase in dollars and cents the market value of such property not taken."

The question in reference to damages to the residue of the tract was whether there would be a diminution in its value by reason of the taking of the right of way and construction of the railroad. If there was such damage, its measure would be the difference in value of such residue before and after such construction. This instruction, instead of allowing defendants' claim of such damage to be offset by benefits, so that there would be no lessening of market value, required that the benefits should actually increase such value. It was not necessary that this should be done, but if, on a consideration of all the facts and circumstances, the jury should conclude that the benefits offset the injuries there would be no damage. Of course, the facts considered must be such as enter into and affect market value, but the instruction was wrong, and properly refused as tending to mislead the jury.

The Calumet Terminal railway was already constructed through the tract of land, and the petitioner's right of way was immediately adjoining it on the south almost its entire length, the two roads running parallel and with no space between except at the east end. There were two hundred and seventy acres on the south side. The defendant John B. Lyon testified that he had an agreement with the Calumet Terminal railway to put in switches for hauling anything desired, and the petitioner's road would cut off that privilege on the south. This was a claim for damage to that part of the land, and another claim was that streets and alleys could not be opened across petitioner's right of way without its consent, and that defendants would be limited to the necessary farm crossings provided by statute. To meet these claims as far as possible, petitioner filed its stipulation, which was made a matter of record, that the proper municipal au-

thorities might open streets, alleys or highways across its right of way without compensation, not depriving it of the use of such right of way, and that defendant Emily C. Lyon should have the right to cross such right of way and its railroad tracks with a suitable and proper switch track and crossing connecting the land south with the Chicago and Calumet Terminal railway. The court instructed the jury that this stipulation was not a covenant personal to Emily C. Lyon, but a covenant running with the land and inuring to the benefit of her vendee, and that they should disregard all testimony as to damages to property not taken, founded upon the theory that petitioner's railroad would be a bar to the construction of the switch track connecting the lands south of the right of way with the Chicago and Calumet railway, or to the opening of streets, alleys or highways across its right of way. Instructions asked by defendants that the stipulation ran only to Emily C. Lyon individually, that her assigns would have no rights under it, and that neither defendants nor individuals purchasing from them would have a right to lay out and construct streets and highways across the right of way except farm crossings, were refused.

The question raised about the switch track is, whether Emily C. Lyon's heirs or assigns can have the benefit of the stipulation, or whether it is only a personal license to her. The practice of showing to what extent property not taken will be damaged or benefited by particular conditions to be performed by the petitioner was introduced in this State by the case of *Jacksonville and Savanna Railroad Co.* v. *Kidder,* 21 Ill. 131. The company was there allowed to show that it would construct a crossing under its road for the use of the land owner, and would put in crossings over the road, with gates and cattle-guards. It was held that the company would be bound to construct the road conformably to the plan, and for a failure to do so the land owner could recover damages, or a court of

equity would restrain it until the additional damages were assessed and paid. That case has been consistently followed. (*St. Louis, Jacksonville and Chicago Railroad Co.* v. *Mitchell*, 47 Ill. 165; *Hayes* v. *Ottawa, Oswego and Fox River Valley Railroad Co.* 54 id. 373; *Peoria and Rock Island Railway Co.* v. *Birkett*, 62 id. 332; *Chicago and Alton Railroad Co.* v. *Joliet, Lockport and Aurora Railway Co.* 105 id. 388.) Under this stipulation a right in the land taken was reserved to the land owner. The estate acquired by the petitioner was made subject to a condition, and the right to put in a switch track and crossing amounts to an exception from the estate vested by the condemnation. The undertaking of petitioner and the right to put in the crossing to connect the land south are, in their very nature, perpetual. In *Chicago and Alton Railroad Co.* v. *Joliet, Lockport and Aurora Railway Co. supra*, a stipulation by petitioner to put in and maintain a crossing was filed, and it was said: "Such covenants are thought to run with the land, and the right of action would always afford complete indemnity to the land owner." By this stipulation the estate acquired by the judgment is subjected to a condition of a perpetual and binding character, which cannot be evaded or denied. Besides, the instruction asked by the petitioner and given by the court construed the stipulation as a covenant running with the land and available to the assigns of Emily C. Lyon. The damages were assessed upon that basis, and petitioner will never be permitted to deny that such is the true construction.

Counsel ask who could enforce the stipulation if Mrs. Lyon should sell the property to different parties or it should be partitioned among her heirs. The same question could be asked as to the agreement with the Chicago and Calumet Terminal Railway Company, or as to any covenant running with the land. It is also said that she may want many crossings, and that the stipulation gives her a right to only one. The instruction did not direct the jury to act upon the assumption that she would get

more than one switch track and crossing, and if the jury had concluded that she needed a great many, the instruction would not prevent their taking that fact into consideration. All that was done was to give the petitioner the benefit of its stipulation that she should have one switch track across its right of way. If there was one crossing, she could, of course, lay out a railroad system on her two hundred and seventy acres to suit herself, and have a system of tracks all over it if she wanted to.

As far as laying out streets across the right of way is concerned, the tract of land is already severed by the Chicago and Calumet Terminal railroad, and there was no evidence that defendants had any right to lay out streets across it. If, therefore, there was any error in the instruction it was entirely harmless. The privilege of laying out streets across petitioner's road would be of no benefit without a similar right across the other road which already cut the land in two. It was not claimed at any time that defendants, or individuals purchasing from them, would have any right to lay out streets across the right of way. The right to open streets is vested in the municipal authorities, and this seems to have been recognized at the trial. We do not think that the jury were misled in any way.

Finally, it is insisted that the verdict was against the evidence. There was the usual difference of opinion among the witnesses as to value and damages. Petitioner's witnesses fixed the value of the land taken from $350 to $450 per acre, and testified that the remainder would be benefited rather than damaged. Defendants' witnesses placed the value at $1200 to $1400 per acre, and the damage to the land south of the railroad from $175 to $300 per acre. At the east side of the tract there was a five-acre piece left between the tracks of the two railroads, and defendants' witnesses said that it was damaged from thirty-five to seventy-five per cent, while the petitioner's witnesses thought its value was increased.

This was a large body of land, and there had been practically no sales in the vicinity.   Its value was speculative, depending upon what the United States might do to benefit it, and upon the location of factories and industrial establishments upon it, and an inquiry into its present value presented the finest possible field for the exercise of fancy and speculation by those who are accustomed to see great possibilities in the future.   But the jury saw the land and judged for themselves of these possibilities, and in such case the reviewing court is deprived of the benefit of very important evidence thus obtained. The rule is, not to disturb a verdict which is within the range of the testimony given in such cases, unless it seems clear that injustice has been done and that it is the result of passion or prejudice.   The value as testified to for defendants was based on the frontage of the tract on a stream known as the Little Calumet, which empties into the Calumet river about a mile and a quarter from the east side of defendants' land, and the fact that it may some time be a manufacturing center.   The United States has dredged the Calumet river for some distance, and it seems that there is some shipbuilding on that stream about five miles from this property and elevators about four miles from it, and if the United States should continue to dredge and reach the Little Calumet and dredge that branch, the land along that stream might be dock property.   The railroad runs from fifty to eighty rods from the Little Calumet, and at that distance the land could hardly be called dock property.   Considering all the evidence and the view by the jury, we cannot say that the verdict was not full compensation.

The judgment will be affirmed.

*Judgment affirmed.*