SALLIE MAY JENNINGS *v.* FIRST NATIONAL BANK OF WILLIAMSON

(No. 8145)

Submitted May 1, 1935. Decided June 10, 1935.

410

MAXWELL and KENNA, JUDGES, dissenting.

*Hogg & Crawford, J. Brooks Lawson* and *Randolph Bias,* for appellants.
*Goodykoontz & Slaven* and *Fred P. Kopp,* for appellee.

LITZ, PRESIDENT:

This suit involves a property settlement between husband and wife in contemplation of divorce in a pending cause.

Plaintiff, Sallie May Jennings, and Dr. O. H. Jennings were married March 17, 1917. Of this union two sons were born, Olin Henry on January 25, 1918, and William James August 25, 1919. Dr. Jennings having sued for divorce, a writing designated "Deed of Trust," was entered into January 9, 1932, by and between himself, party of the first part, Wells Goodykoontz and George W. Crawford, parties of the second part, and Mrs. Jennings, party of the third part. The instrument recites that "O. H. Jennings and Sallie May Jennings are man and wife, living separate and apart;" that a divorce proceeding, "styled O. H. Jennings vs. Sallie May Jennings," is pending in the circuit court of Mingo County, West Virginia; and that the "parties are desirous of settling their property rights as between themselves without the necessity of an adjudication thereon in said cause."

In consideration of the premises and $1.00 in hand paid, the party of the first part and the party of the third part agreed as follows: (1) that the party of the first part will pay unto party of the third part "for her sole and exclusive use and benefit as and for her support and maintenance, and *for so long as she may live, or until she shall again be married,"* the sum of $100.00 per month in two equal installments on the

first and fifteenth days thereof; (2) that in the event of an absolute divorce between them and her re-marriage or death, the monthly payments to be made to her shall thereafter be "used to help educate the two children," Olin Henry and William James, until they shall have arrived at the age of twenty-one years; (3) that she shall retain as her own all personal property in her possession, including jewelry, personal belongings, household and kitchen furniture, cooking utensils, piano, "and other items of like character." There was also "reserved" by the wife her contingent right of dower in the real estate and her contingent statutory interest in the personal property then owned by the husband. Dr. Jennings, by the writing, conveyed to the parties of the second part an undivided one-half interest in valuable real estate in Williamson, West Virginia, to secure the payment of the bi-monthly installments. It was also provided in the instrument that upon default in the payment of any of the installments the parties of the second part shall, at the request of Mrs. Jennings, proceed to sell the property conveyed for the benefit of the trust.

On the day of the execution of the contract a decree was entered in the divorce proceeding, granting the husband a divorce from bed and board and the custody of the children; and reciting that "the matter of maintenance and alimony for the defendant has been settled and agreed upon out of court by the parties hereto, as set forth in a writing called a deed of trust, bearing date the 9th day of January, 1932, * * * which writing the court has seen, and to which he finds no reason for objection."

Dr. Jennings died, testate, March 24, 1934. By his last will and testament, dated August 27, 1928, he bequeathed $1,000.00 to his mother, and devised and bequeathed the remainder of his estate to the two children and nominated the First National Bank of Williamson executor under his will and trustee of the estate devised and bequeathed to the children, until they shall have obtained the age of twenty-five years. This suit was instituted in August, 1934, by the widow against the executor to recover alleged arrears under the

contract of settlement accruing after the death of Dr. Jennings.

Plaintiff having recovered in the circuit court, defendant contends: (1) that the suit is not cognizable in equity; (2) that the payments under the agreement, correctly interpreted, terminated at the death of Dr. Jennings; (3) that the court may change the decree or contract by reducing or cutting off the payments; (4) that the contract is without consideration and against public policy.

1. As the payments, if continuing, are in the nature of an annuity, a court of equity has jurisdiction for their enforcement. 3 C. J. 219; *Fleming* v. *Peterson,* 167 Ill. 465, 47 N. E. 775; *Marshall* v. *Thompson,* 2 Munf. (Va.) 412.

2. Does the agreement, fairly interpreted, require the payment of the installments "for so long as she (Mrs. Jennings) may live, or until she shall again be married," as stated in the writing? or shall this language of the contract be interpreted, as the executor asserts, to read "for so long as they (Dr. and Mrs. Jennings) may live, and she shall not become married to another"? As was stated in *Storey* v. *Storey,* 125 Ill. 608, 18 N. E. 329, 1 L. R. A. 320, 8 Am. St. Rep. 417, involving a consent decree for payment of alimony to the wife "for so long as she may be and remain sole and unmarried," provisions of this character are to be interpreted according to the natural sense and meaning of the language used. The court, in that case, further stated that the natural meaning of the words there used "is that alimony shall be paid for so long a time as Mrs. Storey shall remain unmarried, whether before or after her husband's death." In *Henrie* v. *Henrie,* 71 W. Va. 131, 76 S. E. 837, the court, recognizing this rule, reformed a decree of divorce from bed and board granting the wife alimony "for and during her natural life," so as to read "for and during their joint lives, or until reconciliation." In the opinion of the case, at page 137, it is stated: "The decree appealed from is erroneous, however, in that it provides for the payment of alimony *during plaintiff's life.* It should have been during their joint lives or until reconciliation. *Martin* v. *Martin,* 33 W. Va. 695; *Lockridge* v. *Lockridge,* 3 Dana (Ky.) 28. * * * We will enter a decree below

by substituting for the words, *'for and during her natural life'*, the words, 'for and during their joint lives, or until reconciliation' * * *.'' *Barnes* v. *Klug*, 129 App. Div. 192, 113 N. Y. Supp. 325, holds that a separation agreement providing that the husband shall pay to the wife for her support certain weekly or monthly installments for life, is binding on the husband's personal representatives, though not so stated in terms. In *Stratton* v. *Stratton*, 77 Me. 373, 52 Am. Rep. 779, the court held that a decree for alimony for the life of the wife, according to an award by referees, was binding on the husband's estate. In *Dickey* v. *Dickey*, 154 Md. 675, 141 Atl. 387, 58 A. L. R. 634, the parties, pending divorce proceedings, agreed that in the event of a divorce, permanent alimony should be allowed to the wife in the sum of $25.00 per week payable until her death or remarriage. In a subsequent suit to enforce a decree, based upon the agreement, the court said: ''The agreement by the husband to pay the wife a weekly sum of money until her death or remarriage did not limit his payments to the joint lives of the spouses, and hence was not what the court could have decreed as alimony; but this agreement providing the wife with a weekly stipend, without reference to whether or not the husband survived her, or they lived separate and apart, was properly incorporated in the decree, as was determined by *Emerson* v. *Emerson*, 120 Md. 584, 598, 599, 87 Atl. 1033, and *Newbold* v. *Newbold*, 133 Md. 170, 174, 175, 104 Atl. 366; Miller, Eq. Sec. 269; 2 Bishop, Marr. & Div. sec. 885. When tested by the rule stated, *the decree in this case was not for alimony, but was an adoption by the chancellor of a prior agreement between the parties.''* *Babcock* v. *Babcock*, 147 Misc. 900, 265 N. Y. Supp. 470 (1933), involved the interpretation of a decree of a Pennsylvania court granting a divorce to the husband and requiring him to pay permanent and continued alimony of $1,500.00 per year during the life of the wife or until such time as she shall remarry. In holding that the payments should continue after the death of the husband, the court said: ''It not appearing by statute or judicial decision of the state of Pennsylvania whether the provision for alimony contained in the decree abated upon the husband's death, the

decree will be construed according to the law prevailing in this state. *Murrin* v. *Archibald Consolidated Coal Co.*, 232 N. Y. 541, 134 N. E. 563.

"In *Wilson* v. *Hinman*, 182 N. Y. 408, 414, 75 N. E. 236, 238, 2 L. R. A. (N. S.) 232, 108 Am. St. Rep. 820, while holding that alimony fixed by the court in a judgment of divorce abates upon the death of the husband, the court said: 'It may very well be that by the agreement of the parties alimony might be awarded in a different form from that provided for in the statute; that is to say, the parties might agree that a gross sum should be paid as alimony, or that an allowance should be made to the wife which would bind the husband's estate after his death. An agreement of that character would in no way contravene public policy, and the performance of it would doubtless, be enforceable by the courts.'

"Upon the authority of that decision, it has been held that, when a decree of a court of this state fixed alimony at a certain amount, pursuant to the agreement of the parties, to continue during the life of the wife, the alimony did not cease upon the death of the husband, but could be collected from his estate during the life of the wife. *Whitney* v. *Whitney Elevator & Warehouse Co.*, (C. C. A.) 183 F. 678, certiorari denied 219 U. S. 588, 31 S. Ct. 472, 55 L. Ed. 348. There are decisions in other states to the same effect. *Storey* v. *Storey*, 125 Ill. 608, 18 N. E. 329, 1 L. R. A. 320, 8 Am. St. Rep. 417; *Pryor* v. *Pryor*, 88 Ark. 302, 114 S. W. 700, 129 Am. St. Rep. 102; *Stratton* v. *Stratton*, 77 Me. 373, 52 Am. Rep. 779; *Emerson* v. *Emerson*, 120 Md. 584, 87 A. 1033."

In support of its contention, that the contract contemplated cessation of payments to the wife at the death of the husband, the bank relies especially upon *Parsons* v. *Parsons*, 70 Col. 333, 201 Pac. 559, 18 A. L. R. 1038, involving a decree, supported by an agreement between the parties, adjudging that the wife "shall receive from" the husband "the sum of $35.00 a month alimony for the support of" herself and child "as long as" she "shall remain single and unmarried." The court held that the alimony ceased at the death of the husband. That case, it will be observed, differs from this case in

at least two substantial particulars: (1) the contract of settlement there involved had been merged in an adjudication while the provision here for the wife rests solely upon the separation agreement untrammeled by any adjudication; and (2) payments to the wife in the *Parsons* case were not to continue "for *so long as she may live*," as provided in the contract under consideration. The other cases cited by counsel for defendant are apparently explained upon the theory that they involved adjudications fixing alimony.

In the light of the apparent financial ability and willingness of Dr. Jennings to provide suitable education for the children, the provision in the contract for their benefit in the event of an absolute divorce between the parties and the death or remarriage of the wife would seem to contemplate a time beyond the death of the father when the children could not look to him for support.

It is argued that the contract should not be construed according to the contention of the plaintiff because it secured to the widow the same rights of dower and statutory interests in the property owned by her husband at the time of its execution that she would have received at his death had the divorce from bed and board not been granted. As the contract merely "reserved" to Mrs. Jennings what she would have been entitled to under the law, the provision was ineffectual to prevent the decree of divorce from depriving her of her contingent right of dower and statutory interest in the property of her husband under section 18, article 2, chapter 48, Code 1931. She now waives all claims for dower or statutory interest in the estate. Mrs. Jennings and her sons, capable and promising boys, are living together in apparent peace and harmony.

Counsel for plaintiff, in their brief, say: "If it was intended she should have the monthly payments after his demise, how easy and natural it would have been to say that in event of his death before her death or remarriage, the monthly payments thereafter to accrue would be and become a charge against his estate." It might be more pertinent to

inquire, if it was intended that the monthly payments should continue only during their joint lives, why did the parties not so stipulate?

3. As the court did not, by its decree in the divorce proceeding, undertake to fix alimony, but left the settlement of the property rights to the parties, there is no adjudication to be revised or reversed.

4. The contention that the contract was without consideration and against public policy cannot be sustained. ''While it is true that husband and wife cannot lawfully enter into an agreement for a divorce, yet it is well settled that the amount of alimony which the husband is to pay to the wife, and the terms of the payment, and the length of time during which such payment is to continue, may be all arranged between them by consent.'' *Storey* v. *Storey,* cited; 13 R. C. L. 1355.

The decree of the circuit court is, therefore, affirmed.

*Affirmed.*

HATCHER, JUDGE, concurring:

Counsel for appellants base their contention entirely on what Mrs. Jennings was or was not, or would or would not, be entitled to *under the law.* The bare fact that the contract was made—under the supervision of eminent counsel—demonstrates that the parties desired an arrangement different from that which would be made by the law. Such contracts, when fairly entered into and when not prejudicial to the rights of third parties, are ''always'' upheld. *Ehler* v. *Ehler,* 259 Ill. App. 142, 146. Accord: *Fox* v. *Davis,* 113 Mass. 255, 258, 18 Am. Rep. 476. The legal obligation of the husband to support the wife is a sufficient consideration for his contractual obligation to do so. *Galusha* v. *Galusha,* 116 N. Y. 635, 643, 22 N. E. 1114. The fact that the instant contract made provisions for Mrs. Jennings largely in excess of what the law would have provided does not affect the legality of the contract. Dr. Jennings was not in debt, and he could be as munificent as he pleased in dealing with his wife. In Mr. Bishop's great work on this subject, Vol. I, sec.

1269, he says: "And whether he (the husband) is in the wrong or not, and whatever the demerits of the wife, he may voluntarily contribute so much to her support as he chooses. No law or policy of the law, under any circumstances (not affecting the rights of third parties), forbids. Therefore, he may lawfully and indissolubly bind himself to render her a specific maintenance." Accord: *Barnes* v. *Klug,* 113 N. Y. S. 325, 328.

It is also said that Dr. Jennings did not expressly attempt to burden his estate with this contract. He placed the property involved in this litigation *in trust* to secure the contract. The law provides no method for burdening property more effective than the one he adopted.

MAXWELL, JUDGE, dissenting:

The husband successfully prosecuted a suit for divorce against his wife. The contract was executed pending final decree. In such circumstances, it is difficult to understand why she should be placed in a more favored position than a wife against whom there is no cause for divorce. Of course, if the contract, beyond peradventure, created such anomalous situation, the meaning would have to be carried out, but I submit that the underlying purpose of the contract, as appears from the body thereof, was not to create an anomaly. However dutiful a wife may have been, the law does not award her a fixed income from her deceased husband's estate.

Analysis of the instant matter should start with the fundamental and familiar postulate that alimony is money required by law to be paid by a derelict husband for the support and maintenance of the wife who has divorced him. The principle is grounded on the legal concept that a husband whose shortcomings have caused disruption of the marriage should not be permitted to escape his moral and legal duty of providing reasonable support for his wife. Alimony ordinarily terminates with the husband's death. These basic propositions must be deemed to have been known and under-

stood by the parties and their counsel when the contract was executed. From such background, examination must be made of the phraseology they employed.

Here is the vital provision: ''That the party of the first part (Dr. Jennings) will pay unto the party of the third part (Mrs. Jennings), for the sole and exclusive use and benefit of the party of the third part, as and for her support and maintenance, and for so long as she may live, or until she shall again be married, as provided in the paragraph next following, the sum of One Hundred ($100.00) Dollars for each and every month, * * *.''

Note that Dr. Jennings did not expressly attempt to place any obligation on his estate. The circumstances disclose that his estate could not justly bear such burden. It was purely a personal undertaking. *Ex necessitate,* it must terminate at his death. He said, in effect, ''If I live, I shall pay to my divorced wife one hundred dollars per month as long as she may live.'' In reality, it was a contract for alimony during their joint lives. He was a man of limited property holdings —insufficient to justify the placing thereon of a burden such as the widow now claims, to the practical exclusion of their children. While he lived and could earn substantial income from the practice of his profession, the obligation he assumed would not seem to be oppressive, otherwise it will absorb his estate.

The view that Dr. Jennings was creating an obligation only for his life is accentuated by the fact that by the contract there is expressly reserved to the wife her contingent right of dower in his real estate and her statutory right to share in the distribution of his personal estate. The plain intent thus seems to have been that she should be paid alimony as long as Dr. Jennings lived, and that she should share in his estate after his death, the alimony then being at an end.

Judge Kenna authorizes me to state that he concurs herein.