IN RE: ESTATE OF FRANK MORTON HEREFORD

(No. 14258)

Decided December 19, 1978.

478

*Bowles, McDavid, Graff & Love, Gary G. Markham and Gerard R. Stowers* for Maxine W. Hereford.

*Love, Wise, Robinson & Woodroe, W. M. Woodroe and S. Clark Woodroe* for Quinta Beall Couch Hereford.

NEELY, JUSTICE:

We granted this appeal to reexamine the law concerning property settlement agreements and alimony decrees which up to this time has been far from clear. In the case before us the Circuit Court of Kanawha County upheld the claim of Quinta Beall Couch Hereford, appellee, for alimony against the estate of her ex-husband, Frank Morton Hereford. Appellant, Maxine W. Hereford, executrix of the estate of Frank Morton Hereford, contends that the property settlement agreement between appellee and the deceased was merged into the alimony decree entered upon their divorce, and that, since the

decree did not specifically provide for the continuance of alimony payments beyond the death of the payor, the right to alimony ceased at Frank Morton Hereford's death. The lower court found that regardless of whether the agreement merged into the decree, the language used in both the settlement agreement and decree clearly provided for alimony beyond the death of the payor. After examining the equitable considerations in this case we agree with the lower court and affirm its holding.

Quinta Beall Couch Hereford, appellee, and Frank Morton Hereford, deceased, were divorced on June 12, 1957. Before their divorce, they entered into an agreement on February 1, 1957 which provided, in part:

> Frank M. Hereford agrees and promises to pay unto Quinta Beall Couch Hereford, on the first day of each and every month beginning on the date hereof, the sum of two hundred fifty dollars ($250.00) as alimony for her maintenance and support, which monthly payments shall continue so long as said Quinta Beall Couch Hereford is living and has not remarried; upon the remarriage of said Quinta Beall Couch Hereford, or in the event of the death of Quinta Beall Couch Hereford, then and in either of which events, said monthly alimony payments shall cease and terminate. The amounts herein provided to be paid may be set forth in any decree granting a divorce between the parties as the amount of alimony payable by the party of the second part to the party of the first part.

The subsequent divorce decree provided, in part:

> It is further ORDERED and DECREED that defendant, Frank M. Hereford, do pay unto the plaintiff, Quinta Beall Couch Hereford, until the further order of this court, the monthly sum of $250.00 as alimony to said plaintiff, so long as she lives or until she remarries ...
>
> . . . .
>
> And, it appearing to the court that plaintiff and defendant have entered into a property set-

tlement agreement, in writing, bearing date the 1st day of February, 1957, a copy of which was introduced in evidence, and that said agreement is in all respects fair and equitable, it is, therefore, accordingly ADJUDGED, ORDERED and DECREED that said agreement be and the same is hereby ratified, approved and confirmed, insofar as same is not in conflict with the provisions of this DECREE.

Frank M. Hereford died November 8, 1975 and no further monthly payments were made to appellee. Appellee filed a claim against his estate for continued payments with Eugene R. Hoyer, Commissioner of Accounts for Kanawha County and the claim was contested by the appellant executrix. The Commissioner of Accounts' final report submitted to the County Commission of Kanawha County allowed appellee's claim and the appellant filed exceptions. By order dated August 2, 1977, the County Commission approved the report. Appellant appealed to the Circuit Court of Kanawha County, executed bond, and placed certain assets of the estate in escrow to secure appellee's claim. By order dated April 28, 1978, the lower court upheld appellee's claim stating:

The language of said agreement provides that Frank M. Hereford shall pay unto the said Quinta Beall Couch Hereford the sum of $250.00 a month as alimony, "which monthly payment shall continue so long as said Quinta Beall Couch Hereford is living"; and the language of said decree of the Domestic Relations Court of Kanawha County, West Virginia, orders that said Frank M. Hereford do pay unto the plaintiff Quinta Beall Couch Hereford the monthly sum of $250.00 as alimony to said plaintiff "so long as she lives (or until she remarries)"; and both contain language expressly providing for alimony beyond the death of Frank M. Hereford; and said decree constitutes a valid judgment binding the said Frank M. Hereford so long as he lived and binding his estate after the death of said Frank M. Hereford, to pay $250.00 each month to Quinta Beall Couch

Hereford so long as she lives or until she remarries.

The equitable considerations in this case have a significant bearing on the result. Our law is replete with interesting rules which can be manipulated in such a way as to permit a court to arrive at any desired result in a case of this nature. We suspect that previous cases have manipulated these rules in such a way as to arrive at equitable results in those cases; however, the effect of that manipulation process has been untoward with regard to the degree of certainty with which our law can be predicted. Consequently, we wish to point out that the facts of the case before us have a significant impact on the result, and as domestic relations are governed by the traditions of equity, the pathetic facts before us are a perfectly proper consideration for both the lower court and ourselves. It is uncontested that Frank M. Hereford made all payments during his life and that appellee is now 71 years old, in ill health, and a resident of the Mountain State Nursing Home where she seems destined to die. Her prognosis indicates that she will never be able to work again and is unable to care for herself.

I

A great deal of incomprehensible domestic relations law in the State of West Virginia hinges upon the technicality of whether a property settlement has been "ratified and confirmed" by a court, in which case the parties are left to contract remedies for the enforcement of the settlement or, alternatively, whether provisions of a property settlement are "merged" into the divorce decree. If the provisions are "merged" they become subject to the continuing jurisdiction of the court which may extinguish or enlarge rights to periodic payments (alimony) initially provided by the property settlement agreement. *Corbin v. Corbin,* ____ W. Va. ____, 206 S.E.2d 898 (1974).[1]

_____

[1] Our previous cases on the relation between property settlement agreements and subsequent alimony decrees provide something for everyone; confusion rather than clear guidance has been our most

We have held that where a property settlement agreement is merely "ratified and confirmed" the property settlement agreement does not become part of the decree and any periodic payments (alimony) provided for in such property settlement agreement can be neither enlarged or diminished by the circuit court. *Farley v.*

---

liberally generated product in this area and this writer acknowledges that he is as much if not more, a part of that unfortunate development as any of his illustrious predecessors.

Our road to confusion began with *Miller v. Miller,* 114 W. Va. 600, 172 S.E. 893 (1934), a case involving modification of an alimony decree. Prior to the original decree the parties had entered into a property settlement agreement obligating Mr. Miller to pay $150 per month and the court "made reference to the said contract" and decreed payments of $150 per month. The court granted a modification of the decree but stated that its holding would not have any bearing on Mrs. Miller's contract rights *if any existed.*

A year later in *Jennings v. Bank,* 116 W. Va. 409, 180 S.E. 772 (1935), this Court was presented with a case where the parties had entered into a property settlement agreement and a subsequent divorce decree recited the agreement as dispositive of the alimony issue. Without discussion of merger or confirmation the Court decreed alimony to extend beyond the death of the payor according to the agreement.

About thirty years passed without any clarification of what was necessary to keep a property settlement agreement alive or, in the alternative, to obliterate it with a subsequent decree. When clarification was attempted it was not very successful. In *Farley v. Farley,* 149 W. Va. 352, 141 S.E.2d 63 (1965), we held that a property settlement agreement was alive and well as long as it was not specifically "merged" into a subsequent alimony decree. What amounted to specific merger was not revealed but it was seemingly made clear that ratification, confirmation and approval didn't do the trick.

Almost another decade passed and this writer got his chance to clear matters up in *Corbin v. Corbin,* ___ W. Va. ___, 206 S.E.2d 898 (1974) and *Beard v. Worrell,* ___ W. Va. ___, 212 S.E.2d 598 (1974). In *Corbin,* the parties had entered into an extensive property settlement agreement providing, in part, that Mr. Corbin would pay Mrs. Corbin $5,773.20 per year and that the agreement *could not* be merged into a subsequent divorce decree. Mrs. Corbin obtained a divorce and the domestic relations court decreed the property settlement agreement to be approved, confirmed and incorporated into its decree. We held that merger had taken place and an increase could be made in alimony. We then knew that the words "merged" or "incorporated" in a decree served to remove contract remedies on proper agreements and that the words "ratified,"

*Farley*, 149 W. Va. 352, 141 S.E.2d 63 (1965). Where, however, a property settlement agreement providing for alimony or periodic payments is merged or made a part of the decree, we have held that the circuit court may increase or decrease the amount of payments in subsequent proceedings in the same way that it could if it had awarded alimony after a contest without any property settlement agreement. *Corbin v. Corbin, supra.*

In answering the qustion presented by the case before us any one of numerous results could be justified by relying upon our prior precedent. Appellee argues strenuously that when the parties and the court used the words of art "... the sum of two hundred fifty dollars ($250.00) as alimony for her maintenance and support, which monthly payments shall continue *so long as said Quinta Beall Couch Hereford is living and has not remarried ...*" and the words of art in the divorce decree "... the monthly sum of $250.00 *as alimony* to said plaintiff, *so long as she lives or until she remarries ...*" they intended that the alimony award be chargeable against the husband's estate if the appellee survived him, because it was specifically contemplated that appellee be supported during her entire life notwithstanding her former husband's possible early death.

The appellant, on the other hand, urges two rules: first, that as a general principle alimony does not survive the husband's death; and, second that by ordering and decreeing that Frank M. Hereford pay the plaintiff

---

"confirmed," and "approved" did not, but that is all we knew. A few months later, in *Beard v. Worrell*, we offered no greater clarification but only added to the confusion by speaking in broad terms that:

> [W]hen a valid property settlement agreement has been executed by the parties, unless such agreement is induced by fraud, is collusive, or promotes separation or divorce, it will be enforced in an appropriate action at law." 212 S.E.2d at 608.

which words tend to negate even the merger route for denying contractual relief. What all these cases seem to do is ignore the intentions of the parties, quite possibly because the parties did not really *intend* anything—they merely used language the way everyone else uses it, to-wit, carelessly.

the monthly sum of $250.00 as "alimony," the court *merged* the property settlement agreement with regard to periodic payments into the divorce decree and in so doing extinguished all contract rights arising under the settlement agreement. Therefore, according to appellant, even if the appellee would have been entitled to a contract action against the estate based on the language of the property settlement agreement alone, the court converted the consensual agreement for periodic payments into judicially decreed alimony, and thereby extinguished the contract right.

There is authority in West Virginia for the proposition that an alimony decree may survive the death of a former husband and become a charge against his estate. *Hale v. Hale,* 108 W. Va. 337, 150 S.E.748 (1929); *Jennings v. Bank,* 116 W. Va. 409, 180 S.E. 772 (1935). The appellant cites cases from other jurisdictions which recite significant policy reasons for holding that alimony cannot become a charge against the estate of a deceased former husband.[2] Among the reasons cited are that it may leave wives and young children of subsequent marriages without means of support, and that it is difficult to reduce a right to alimony to a present value because such awards are conditioned upon the former wife not remarrying. As a general rule we agree that it is poor policy to permit alimony awards to survive the death of a former husband; however, there are certain cases such as the one before us, in which all of the reasons for the rule fail and, therefore, the rule should fail. In this case

[2] Typical of the cases discussing the practical reasons why alimony obligations should not survive the death of the payor is *Kuhns v. Kuhns,* 550 P.2d 816 (Alaska 1976) where that court said:

In most cases the continuance of alimony causes hardship, inconvenience and expense to those closer to the husband than his ex-wife, such as the wife and children of a second marriage. It requires the estate to be held open, perhaps for a long time, and may frustrate the scheme of disposition set up in the husband's will. Although there may be circumstances where alimony ought to continue ... such cases are rare, and the rule should be that alimony ends on his death unless the decree plainly provides otherwise. 550 P.2d at 818.

the former wife is 71 years old; she is in a nursing home bereft of all assets other than a small social security payment; she will not remarry; and, she is in dire and necessitous circumstances. Alternatively, her former husband's estate is large; he has no minor children in need of care and maintenance; he has left no close relatives (except his second wife) dependent upon him for support; and, the commissioner of accounts and the circuit court have been able to reduce the claim for future alimony payments to a reasonable sum certain.

Accordingly, we hold today that under circumstances where the equities are such that good sense commands that an alimony decree survive the death of a former husband, the circuit court is empowered to order that a certain sum be taken from a deceased former husband's estate as a lump sum settlement of a right to future alimony, or that the alimony continue, in much the same way that the court can modify its decree for alimony in other regards in the event of any change of circumstances which requires a modification of an original award.

## II

We dream today of inaugurating a system of domestic relations law in this State which is not dependent upon the use of words of art. Any experienced lawyer knows that as often as not so called "words of art" are used without intending or implying any particular legal consequences, only later to have those consequences imposed upon unsuspecting parties by courts. The Court suspects that this is what happened with regard to the so-called words of art used in both the property settlement agreement and the divorce decree in the case before us, as both parties to this appeal rely upon conflicting words of art. It does not appear to the Court that the lawyers contemplated any deep meaning for the expression "so long as said Quinta Beall Couch Hereford is living" nor did the lawyers drafting the divorce decree speculate at great length upon whether the property

settlement agreement was ratified and confirmed or, to the contrary, merged into the decree.

In order to disengage ourselves from the mire of words of art we hold today that in all future cases in which the final order is entered after 1 February 1979 the holdings of our prior cases which make a major distinction in the operation of divorce laws depend upon whether a property settlement has been "ratified and confirmed" or "merged" or "adopted" by a subsequent decree, are overruled. For all divorce decrees and property settlement agreements made or entered into after 1 February 1979 the parties may do anything which they wish by their property settlement agreement as long as it is approved by the circuit court. The parties may specifically agree that the amount of periodic payments or alimony set forth in the property settlement agreement may not ever be increased or decreased by the court; they may specifically contract out of any continuing judicial supervision of their relationship by the circuit court; they may agree that the periodic payments or alimony called for in the property settlement agreement shall be judicially awarded and for the purposes of enforcement may be enforced by the contempt power, (if the payor is able to pay) but that the court shall never have jurisdiction either to increase or decrease the amount regardless of change of circumstances; they may agree that a lump sum settlement in lieu of periodic payments shall constitute the final settlement of the rights of the parties; and, they may agree to any other terms and conditions they wish and which appear at the time the decree is entered to be fair and reasonable to the court. If it appears to the court that the terms are fair and reasonable he may approve them, ratify them or merge them, and by whatever words he uses they shall become part of the decree and binding on everyone including the court. However, in the absence of a specific provision to the contrary in a property settlement agreement appended to, made a part of, or incorporated by reference into the court order, which provision specifically and unambiguously denies the court jurisdiction

in one or more of the regards just discussed, it shall be presumed that regardless of the language used, whether it be "ratified and confirmed," "merged," or any other language of like import, that a periodic payment to which reference is made in a divorce decree is *judicially decreed* alimony or alimony and child support and is subject to the continuing jurisdiction of the circuit court.

The philosophy of this policy is exactly the same as that articulated in *Call v. McKenzie*, ___ W. Va. ___, 220 S.E.2d 665 (1975), a case discussing plea bargaining in criminal cases. In that case we held that it made little difference what a plea bargain is, but that rather what is important is that the bargain be spread upon the record and ratified in open court. For three decades this Court has decided hard domestic relations cases through the use of a rule selection process having as its focal point specific words of art, and the result has been that outrageous traps for the unwary have been created. While the holding today with regard to the wording of future decrees and agreements is prospective only, we wish as quickly as possible to eliminate from the law "magic words" which are very much like the small print in contracts of adhesion. In the 18th century when the body of the law was small, courts might reasonably have relied upon an expectation that all lawyers were conversant with magic words and would consistently use them in a proper way. Today the demands placed upon a practicing lawyer are such that they would tax the ingenuity of history's most versatile renaissance man. Accordingly it is unrealistic to believe that every lawyer knows every magic word in every field of law in which he could possibly engage. The better course, therefore, is to assume that any award of periodic payments in a divorce decree is intended to be judicially decreed alimony unless there is some explicit, well expressed, clear, plain, and unambiguous provision in either the court approved property settlement agreement or the decree. The question of whether a court shall have continuing supervision over the amount of an alimony award, whether the

alimony award shall be enforceable by the contempt remedy, or whether alimony at all shall be awarded as opposed to a lump sum settlement are all fit subjects for negotiation between the parties subject to the overall supervision of the court. Mature adults with the help of the court and counsel should be permitted to negotiate terms and thereby bind themselves. Child support, of course, is always subject to continuing judicial modification.

In the case before us we find that there was sufficient language in the property settlement agreement and the divorce decree itself to permit us to infer that the parties contemplated that the appellee receive support until her death, rather than the death of her former husband. While a forthright analysis of our prior case law requires a confession that this is not the only possible result which could be inferred from our body of law; nevertheless, it is a legitimate, permissible result from the law and in this case it is a just and equitable result which is as good a reason for arriving at that holding as any other.

*Affirmed.*