374 S.E.2d 712

**In the Matter of the ESTATE OF Eli Joel WELLER, M.D., Deceased.**

No. 17963.

Supreme Court of Appeals of West Virginia.

Nov. 4, 1988.

W. Dean Delamater, Hagg & Bonach, Weirton, for Auguste Weller.

Ted M. Kanner, Forman, Kanner & Crane, Charleston, for appellee.

BROTHERTON, Justice:

Following a marriage of almost six years, Dr. Eli Joel Weller, age sixty-eight, and Mrs. Auguste Weller, age fifty-five, were divorced by an order of the Circuit Court of Brooke County entered on July 30, 1983. The circuit court considered the parties' financial needs, earnings and earning abilities, ages, the length of their marriage, the extent of their real and personal property, and the income that each derived from that property, as well as the inequitable conduct of both parties, and entered an order awarding Mrs. Weller alimony for a thirty-six month period, $300.00 per month for the first twenty-four months and $150.00 per month for the final twelve months. The court also awarded Mrs. Weller a lump sum of $4,000.00 which was not to be treated as alimony, but instead represented Mrs. Weller's interest in the marital savings and reimbursement to her for medical and household expenses which

should have been paid by Dr. Weller. This lump sum, without interest, was payable on June 1, 1984.

Dr. Weller had paid eight of the monthly alimony installments of $300.00 when he died on April 24, 1984. Mrs. Weller filed a Proof of Claim against Dr. Weller's estate for the remaining twenty-eight installments, with interest. The executor and beneficiaries of the estate resisted the claim. Following a hearing, Fiduciary Commissioner William T. Fahey found on December 19, 1984, that because the divorce decree did not contain specific language binding the estate to make future alimony payments in the event of Dr. Weller's death, Mrs. Weller was not entitled to receive the payments after his death. This finding was affirmed by the County Commission of Hancock County on November 6, 1985. Mrs. Weller then appealed to the Circuit Court of Hancock County, and on November 13, 1986, that court affirmed the denial of the installment payments beyond the month of Dr. Weller's death.[1]

The issue now before this Court is whether the Circuit Court of Hancock County erred when it refused to require the Estate of Eli Joel Weller, M.D. to continue making the monthly installment payments on the alimony award to the appellant, Mrs. Auguste Weller, under the July 30, 1983 divorce decree, beyond the month of his death, April, 1984.

Mrs. Weller claims that the divorce decree awarded her alimony in gross totaling $9,000.00 and that the right to receive this amount vested as of the date of the divorce decree. Therefore, she argues that the installments remaining to be paid after Dr. Weller's death are a judgment enforceable against Dr. Weller's estate just as any other judgment would have survived his death and been payable from the estate. We agree with Mrs. Weller and reverse the decision of the Circuit Court of Hancock County for the reasons set forth below.

■ This Court has long recognized that there are circumstances in which alimony

---

1. The order of the Circuit Court of Hancock County stated:

> Without further specification in the Order (of the 30th day of July, 1983) the right to receive

and the duty to pay alimony are personal and terminate on the death of either party.

may be made payable from the estate of a payor former spouse.[2] In syllabus point 2 of *In re Estate of Hereford*, 162 W.Va. 477, 250 S.E.2d 45 (1978), we stated:

> While as a general rule alimony does not survive the death of a payor former spouse, where there are compelling equitable considerations which militate in favor of making alimony a charge against a deceased former spouse's estate, the circuit court has the power to make such an award pursuant to the same authority which entitles a court of equity to modify any alimony award to reflect changed circumstances.[3]

*Id.*, 162 W.Va. at 481, 250 S.E.2d at 47.

■ Following the *Hereford* decision this Court formulated a "better rule" in *Prather v. Prather*, 172 W.Va. 348, 305 S.E.2d 304 (1983). Specifically, the Court said:

> We believe that the better rule is that in order for alimony to be binding on an estate the divorce decree, or property settlement agreement if it is ratified or approved in the court decree, must specifically state that the obligation is binding on the estate.[4]

*Id.*, 172 W.Va. at 352–353, 305 S.E.2d at 309.

The substance of the rule enunciated in *Prather* was codified by the West Virginia Legislature in 1984 and became what is now West Virginia Code § 48–2–15(f) (1986).[5] However, this statute is not retroactive with respect to alimony payments and is therefore not dispositive of the issue in this case.[6] While the respondent argues

2. In *Hale v. Hale*, 108 W.Va. 337, 150 S.E. 748 (1929), this Court concluded that the statute (now W.Va.Code § 48–2–15) which authorized a divorce court to make "such 'decree as it shall deem expedient, concerning the estate and maintenance of the parties' " was also "of sufficient breadth to warrant a requirement by the trial court that permanent alimony be paid out of a husband's estate after his death, when, in the chancellor's opinion, such course is just and right." 108 W.Va. at 341, 150 S.E. at 749. Similarly, in the syllabus of *Jennings v. First National Bank of Williamson*, 116 W.Va. 409, 180 S.E. 772 (1935), we stated:

> A separation agreement entered into between husband and wife in contemplation of divorce providing for periodic payments by the husband to the wife for her "sole and exclusive use and benefit * * * as and for her support and maintenance and for so long as she may live, or until she shall again be married," in the absence of other provisions clearly indicating a contrary intent, will continue after the death of the husband.

3. In *Hereford*, the compelling equitable considerations which led this Court to make the alimony a charge against the deceased husband's estate included the former wife's unfortunate circumstances (at age 71 she was very ill, unable to care for herself and confined to a nursing home) and the fact that her deceased former husband left a large estate and *no minor children* or close relatives other than his second wife who were dependent upon him for support. 162 W.Va. at 486, 250 S.E.2d at 51.

4. In *Prather* a final divorce order impressed a trust upon a $30,000.00 certificate of deposit registered in Mr. Prather's name to secure his payment of permanent alimony and medical expenses to his former wife. 172 W.Va. at 350,

305 S.E.2d at 306. This Court held that where the circuit court made no specific finding indicating that alimony payments were to be binding on the husband's estate, the circuit court had no authority to make the trust on the certificate of deposit binding on the husband's estate. *Id.*, 172 W.Va. at 352–353, 305 S.E.2d at 309.

5. West Virginia Code § 48–2–15(f) (1986) states:

> In every case where a separation agreement is the basis for an award of alimony, the court, in approving the agreement, shall examine the agreement to ascertain whether it clearly provides for alimony to continue beyond the death of the payor party or to cease in such event. Where alimony is to be paid pursuant to the terms of a separation agreement which does not state whether the payment of alimony is to continue beyond the death of the payor party or is to cease, *or where the parties have not entered into a separation agreement and alimony is to be awarded, the court shall specifically state as a part of its order whether such payments of alimony are to be continued beyond the death of the payor party or cease.* (Emphasis added).

6. West Virginia Code § 48–2–36 (1986) states:

> Amendments made to the provisions of this article during the regular session of the legislature in the year one thousand nine hundred eighty-four *shall be of retroactive effect to the extent that such amended provisions shall apply to the distribution of marital property, but not an award of alimony,* in all actions filed under the provisions of this article after the twenty-fifth day of May, one thousand nine hundred eighty-three, or actions pending on that date in which a claim for equitable distribution of marital property had been pleaded: Provided, That such amendments to the provi-

that the divorce decree did not state that alimony obligations were to be binding on the estate, and thus urges this Court to follow the "better rule" discussed in *Prather*, we believe the better result will be reached in this case by examining the plain language of the divorce decree and applying an exception to our general rule that alimony does not survive the death of a payor former spouse.

The June 30, 1983 divorce decree granted to Mrs. Weller alimony which is properly characterized as alimony in gross. *Black's Law Dictionary* defines "alimony in gross" as follows:

> *Alimony in gross,* or in a lump sum, is in the nature of a final property settlement, and hence in some jurisdictions is not included in the term "alimony," which in its strict or technical sense contemplates money payments at regular intervals. Refers to those alimony arrangements where entire award is a vested and determined amount and not subject to change. *Imbrie v. Imbrie,* 94 Ill.App.2d 60, 236 N.E.2d 381, 383.[7]

*Black's Law Dictionary* 67 (5th ed. 1979). This divorce decree entitled the appellant to definite alimony payments which were fixed to terminate at a definite time. The obligation to pay Mrs. Weller $300.00 a month for twenty-four months and $150.00 a month for twelve months was separate from the $4,000.00 lump sum award in both form and purpose. The decree specified that the lump sum was "not to be treated as alimony" as it represented Mrs. Weller's interest in the marital savings and reimbursement to her for money spent during the marriage on items that should have been paid for by Dr. Weller. However, the decree did not label the alimony award nor did it contain qualifying language which attempted to limit the appellant's right to receive these payments. For example, the decree did not state that Mrs. Weller's right to alimony would terminate in the event of either her remarriage or Dr. Weller's death, in which case we would characterize the award as "periodic alimony."[8] While we recognize the inadequacies of the decree in failing to either label the alimony award[9] or explain its specific purpose, we

---

sions of this article shall not, in any case, be applicable to actions filed under the provisions of this article in which, prior to the effective date [June 8, 1984] of the act of the legislature enacting such amendments, (1) there has been a final decree entered under the provisions of section fifteen [§ 48–2–15] of this article, or (2) the taking of evidence has been completed and the case has been submitted for decision. (Emphasis added).

7.  Similar definitions can be found in cases too numerous to list. *See generally* 18A *Words and Phrases,* Gross Alimony, p. 477 and Pocket Part.

We acknowledge that in some jurisdictions alimony in gross is not subject to modification. Though the right to seek modification was not discussed in the Weller divorce decree, W.Va. Code § 48–2–15(e) (1986) permits a party to petition for a modification of an alimony award upon a showing of need or changed circumstances. Obviously courts will reach varying conclusions depending upon their own statutes, their policy regarding alimony awards, and the language in a particular divorce decree. Thus, while some courts may specifically state that alimony in gross cannot be subject to modification, our statute does not permit such a requirement.

8.  In *LeMaistre v. Baker,* 268 Ala. 295, 105 So.2d 867 (1958), the divorce decree ordered a man to pay his former wife "$300.00 per month, as

alimony, said payment to begin immediately and be payable on the first day of each calendar month hereafter, until the (wife) dies or remarries." *Id.,* 105 So.2d at 868. Upon her former husband's death, Mrs. Baker sought a determination that this decree awarded her alimony in gross and thus survived Mr. Baker's death and became a charge upon his estate. The Supreme Court of Alabama rejected this argument. The court found that although a set amount of alimony was to be paid each month, the limitation that the payments would end only upon the death or remarriage of the former wife was not specific with respect to exactly when payments would end and thus a gross amount could not be ascertained. The court concluded that instead of granting a vested right, the decree "merely provided a periodic allowance for current and continuous support." *Id.* at 870.

9.  Though it was not labeled as such in the original decree on July 30, 1983, the same judge later referred to Mrs. Weller's alimony award as "rehabilitative alimony" in the November 13, 1986 order of the Circuit Court of Hancock County. The goal of rehabilitative alimony is to provide assistance so that the dependent spouse may be financially self-supporting by the end of the rehabilitation period. There is no language in the July 30, 1983 order which indicates that the purpose of the award was to allow Mrs. Weller to rehabilitate herself. We agree with

nonetheless believe the payment terms indicate that Mrs. Weller had a vested right to receive a total sum of $9,000.00 from her former spouse over a three-year period and that her award may therefore be properly characterized as "alimony in gross." [10]

As we noted above, W.Va. Code § 48–2–15(f), as amended in 1984, requires that separation agreements and divorce orders specifically state whether alimony payments are to be continued beyond the death of the payor. While we hope that this requirement eliminates the drafting of ambiguous decrees such as the one in question here,[11] it is not applicable to the Wellers' 1983 divorce decree. We find, therefore, that where the provisions of W.Va. Code § 48–2–15(f) are not applicable, an alimony award will be characterized as "alimony in gross" only if the award grants alimony from which one can determine the total amount to be paid as well as the time such payments will cease. In the absence of a contrary intention, the right to receive alimony in gross vests on the date it is ordered and, in the event of the payor's death, the amount due becomes a charge upon the payor's estate. Having determined that the appellant was awarded alimony in gross totaling $9,000.00, we conclude that Mrs. Weller is entitled to the $6,600.00 she stood to receive from Dr. Weller had he lived, such amount now being payable from Dr. Weller's estate. The Circuit Court of Hancock County is hereby ordered to enter judgment for the appellant consistent with this opinion.

REVERSED AND REMANDED.

---

Mrs. Weller that if the alimony was indeed meant to be rehabilitative in nature, then the right to such support for the limited period described in the divorce decree should not be thwarted by the death of the payor former spouse.

10. A similar result was reached in *Spencer v. Spencer*, 165 Neb. 675, 87 N.W.2d 212 (1957), where the Supreme Court of Nebraska held that a decree which "definitely described the alimony payments and fixed the same in a definite amount, as well as the time of payment of the same, and when the payments would terminate" evidenced an intent to have the alimony payments continue as a charge against the deceased spouse's estate. *Id.*, 87 N.W.2d at 218. In *Spencer* the court stated:

An unqualified allowance of alimony in gross, whether payable immediately in full or periodically in installments, and whether intended solely as a property settlement or as an allowance for support, or both, is such a definite and final adjustment of mutual rights and obligations between husband and wife as to be capable of a present vesting and to constitute an absolute judgment.

*Id.* at 218, citing *Ziegenbein v. Damme*, 138 Neb. 320, 292 N.W. 921 (1940).

11. We note with interest and approval the result in *Sharplin v. Sharplin*, 465 So.2d 1072 (Miss. 1985), where a property agreement stated that the husband was to pay the wife $100.00 per month as alimony at the rate of $50.00 on the 1st and 15th day of each and every month beginning October 15, 1982, for 36 months." Following the wife's remarriage, the husband attempted to be relieved of his alimony obligation. The chancellor found that the husband's obligation to pay alimony terminated when his former wife remarried.

The Supreme Court of Mississippi affirmed, citing its decision several years earlier in *Wray v. Wray*, 394 So.2d 1341 (Miss.1981). The court stated:

Very often alimony awards are ambiguous, and it was our view in *Wray* that if parties wish to have the alimony payments be considered "lump sum" or "gross" alimony as opposed to periodic alimony, terminable upon the death or remarriage of the wife, they should remove the ambiguity by clear, unequivocal language. Otherwise, we will interpret the alimony as periodic.

*Id.* at 1073.

We believe the effect of W.Va. Code § 48–2–15(f) is to impose similar obligations on attorneys in this State who draft property settlements and divorce decrees by demanding specificity where alimony payments are to be continued beyond the death of the payor spouse.