424 S.E.2d 744

**Robert Lewis WHARTON, Plaintiff Below, Appellee,**

v.

**Barbara Jean WHARTON, Defendant Below, Appellant.**

**No. 20732.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 1992.

Decided Dec. 10, 1992.

W. Dale Greene, Charleston, for appellee.

Donald K. Bischoff, Summersville, for appellant.

PER CURIAM:

Barbara Jean Wharton appeals the decision of the Circuit Court of Nicholas County that denied her an increase in alimony, refused to require her alimony to be a charge against the estate of Robert Lewis Wharton (her former husband) and denied her attorney's fees. On appeal, Mrs. Wharton contends that the circuit court abused his discretion in these matters. Because we find that the circuit court erred, we reverse the decision of the circuit court.

After eighteen years of marriage, Mr. and Mrs. Wharton were divorced on April 29, 1971. Mrs. Wharton was awarded custody of the four children, then ages 17, 13, 10 and 2 and Mr. Wharton, whose income was then $48,000, was required to pay $150 per child per month in child support and $650 per month in alimony and to provide a college education for each child.[1] The divorce order did not distribute stock in a supply company that was begun in 1961 by Mr. Wharton and others. Mr. Wharton continues to own one-half of the stock and to be employed by the company. In 1988 the supply company had gross sales in excess of $5,000,000, total assets in excess of $1,000,000 and retained unappropriated earnings of about $500,000. In the divorce, Mrs. Wharton retained a 1970 Oldsmobile and the marital house was deeded to the parties' four children.

Mrs. Wharton did not remarry and her 1986 annual income of $8,336 was derived from alimony ($7,800), stock dividends ($509) and interest ($27). Although Mrs. Wharton, a high school graduate with some

---

1. Although all of the parties' children have attained majority, one child remains in college, which costs Mr. Wharton about $1000 per month.

office skills, has been unemployed for five years, she worked as a receptionist and a clerk and was the proprietor of a used furniture store. Throughout their formative years Mrs. Wharton cared for the parties' four children[2] and currently, she is caring for her seventy-nine-year-old mother who is suffering from Alzheimer's disease.[3] Mrs. Wharton's financial need is about $11,600 per year and, because of a lack of money, she has deferred medical treatment, dental work and new glasses. Mrs. Wharton also owns a 1976 Chevrolet, some AT & T stock, one-half interest in the former marital house[4] and a $10,000 certificate of deposit, all of which were gifts from her family.

Mr. Wharton remarried once but is not currently married. Mr. Wharton's gross income was $133,742 in 1985, $66,932 in 1986, $81,690 in 1987 and $104,638 in 1988. Mr. Wharton owns certain assets that produce about $3,000 per year in tax exempt interest and a tax shelter-real estate investment that generates a "paper" tax loss of approximately $4,000 per year. Mr. Wharton also owns a motor home (purchased for $62,300), two Model-A Fords, a Lincoln Continental, an IRA valued at $17,500, a pension valued at $126,500, stocks and bonds valued at $80,000 (most of which produce tax free income), a residence with an estimated value of $70,000, a condominium with an estimated value of $40,000 and a bank account of at least $6,000. Because of his employment, Mr. Wharton receives the following benefits: health insurance, life insurance, contributions to his pension plan, a company car and maintenance of the company car. Mr. Wharton's monthly financial need is $4,690.

The parties were referred to the family law master who, after hearing the evidence, said that "Mrs. Wharton lives on the edge of poverty, while Mr. Wharton enjoys a very substantial income and lifestyle [sic]." The master recommended that Mrs. Wharton's alimony be raised from $650 to $1,300 per month effective May 1, 1990.

Both parties petitioned the circuit court for review; Mr. Wharton objected to the alimony increase and Mrs. Wharton objected because the master did not recommend that the alimony be charged against her former husband's estate and did not award her attorney's fees. After hearing arguments on the petitions, the circuit court refused to increase Mrs. Wharton's alimony from $650 per month, refused to make Mrs. Wharton's alimony a charge against Mr. Wharton's estate and denied Mrs. Wharton's motion for attorney's fees and costs. Alleging that the circuit court had abused his discretion in these matters, Mrs. Wharton appealed to this Court.

I

■ *W. Va. Code*, 48–2–16(a) [1984] states that the award of alimony is "subject to subsequent modification unless there is some explicit, well expressed, clear, plain and unambiguous provision to the contrary set forth in the ... order granting the divorce." The party seeking the modification has the burden of showing that an unexpected substantial change of circumstances occurred. In *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987) we said that "[t]he party petitioning for a modification of the support provisions of a divorce decree bears the burden of showing a sub-

---

**2.** Because of one child's medical problems, Mrs. Wharton was constantly "on-call" for several years effectively barring her for that period from the job market.

**3.** Mrs. Wharton owns and controls various assets that were owned by her mother, including certificates of deposit and a house. Although no trust document exists, Mrs. Wharton treats these assets as a constructive trust for her mother's benefits and does not use these assets for her personal needs.

Mr. Wharton argues that in addition to alimony Mrs. Wharton's income includes $460 per month from her mother's social security check, $102 per month from her mother's pension and about $200 per month interest from her mother's certificates of deposit. Mr. Wharton also maintains that her mother's house has a potential rental value of $400 per month. However the record shows that Mrs. Wharton's mother spends part of the time at her home and part at Mrs. Wharton's home.

**4.** Two of the parties' children conveyed their interest in the former marital house to their mother, Mrs. Wharton.

stantial change of circumstances" (Syllabus Point 3) and that "the change must be one which would not reasonably have been expected at the time of the divorce decree." (Syllabus Point 4, in part.)

An unexpected substantial change of circumstances can be shown by various factors. In *Lambert v. Miller*, 178 W.Va. 224, 226, 358 S.E.2d 785, 787 (1987) (considering modification of a child support order), we listed several factors that may be considered, including: "a change in the financial resources or ability to pay on part of the parent obligated to pay support, needs of the child or children for whom support is paid, ... and the duration of the change...." In Syllabus Point 2, *Gardner v. Gardner*, 184 W.Va. 260, 400 S.E.2d 268 (1990) we expanded upon those factors that may be considered to show a substantial change in circumstances by holding that "a change in the cost of living caused by inflation or increases in the children's needs ... or unexpected changes affecting basic needs such as housing or transportation" can be a substantial change in circumstances.

The evidence in this case shows that both parties had substantial changes in circumstances. Mrs. Wharton, who was 40 years old in 1971 when she was divorced, has held only low paying jobs and since 1984 she has been unemployed. In addition, Mrs. Wharton is providing substantial care for her infirmed mother. Mr. Wharton's company is a financial success and his income increased from about $48,000 at the time of the divorce to about $104,000 in 1988. Based on the evidence of record, we find that Mrs. Wharton has shown uncontemplated substantial changes of circumstances.

Based on the unequal financial resources and potential earnings of the parties, the family law master recommended that Mrs. Wharton's alimony be doubled to $1,300 per month. *See West Virginia Code*, 48–2–16(b) [1984], which includes among the factors to be considered in determining the amount of alimony, "[t]he present employment income ... of each party ...; [t]he income-earning abilities of each of the parties ...; [and t]he financial need of each party...." [5]

In his petition to the circuit court, Mr. Wharton successfully argued that consideration should be given to the income of Mrs. Wharton's mother because Mrs. Wharton controls the income through a power of

**5.** According to *West Virginia Code*, 48–2–16(b) [1984] the following factors are to be considered "in determining the amount of alimony":

(1) The length of time the parties were married;

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two [§ 48–2–32] of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(9) The anticipated expense of obtaining the education and training described in subdivision (8) above;

(10) The costs of educating minor children;

(11) The costs of providing health care for each of the parties and their minor children;

(12) The tax consequences to each party;

(13) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(14) The financial need of each party;

(15) The legal obligations of each party to support himself or herself and to support any other person; and

(16) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance.

attorney and provides her mother with substantial care. The monthly income of Mrs. Wharton's mother includes $460 from social security, $102 from a pension and about $200 from interest on certificates of deposit. However, the record contains no information on the living expenses for Mrs. Wharton's mother, except Mrs. Wharton's testimony that her mother's income is used to provide round-the-clock care, some of which occurs in the former home of Mrs. Wharton's mother. In *Conner v. Conner*, 175 W.Va. 512, 514, 334 S.E.2d 650, 652 (1985), we allowed a contribution similar "to rent" paid by a mother living with a party to be considered by the trial court, "particularly since the wife does not urge that the amount of alimony and child support awarded is inadequate." In the present case there is no evidence to justify considering Mrs. Wharton's mother's income to be a contribution similar "to rent."

Mr. Wharton also argues that the rental value of Mrs. Wharton's mother home should be added to Mrs. Wharton's available resources. This argument is based on the unwarranted assumption that Mrs. Wharton's mother no longer occupies her home. *See supra* note 3. Given the record, we find the circuit court should not have considered Mrs. Wharton's income to include her mother's income and should have followed the family law master's recommendation to increase Mrs. Wharton's alimony.

■ *W.Va.Code*, 48A–4–10(c)[1990] provides, in pertinent part:

The circuit court shall examine the recommended order of the master, along with the findings and conclusions of the master, and may enter the recommended order,' may recommit the case, with instructions, for further hearing before the master or may, in its discretion, enter an order upon different terms, as the ends of justice may require....

In Syllabus Point 3 of *Shank v. Shank*, 182 W.Va. 271, 387 S.E.2d 325 (1989), we said:

6. Mrs. Wharton's petition did request "[t]hat she be awarded such further other general relief

" 'In a divorce suit the finding of fact of a trial chancellor based on conflicting evidence will not be disturbed on appeal unless it is clearly wrong or against the preponderance of the evidence.' Syllabus Point 1, *Marcum v. Browning*, [171] W.Va. [5], 297 S.E.2d 204 [ (1982) ]; Syllabus, *Waller v. Waller*, 166 W.Va. 142, 272 S.E.2d 671 (1981); Syllabus Point 4, *Belcher v. Belcher*, 151 W.Va. 274, 151 S.E.2d 635 (1966); Syllabus Point 3, *Taylor v. Taylor*, 128 W.Va. 198, 36 S.E.2d 601 (1945)." Syllabus, *Fizer v. Fizer*, [172] W.Va. [704], 310 S.E.2d 465 (1983).

We find that the circuit court's order refusing to follow the family law master's recommendation to increase Mrs. Wharton's alimony to $1300 per month was not required by the "ends of justice" and was against the preponderance of the evidence.

## II

■ Mrs. Wharton also maintains that the circuit court erred in failing to require that her alimony be a charge against the estate of Mr. Wharton. The parties' divorce order did not make the alimony payments binding on the estate of Mr. Wharton, and Mrs. Wharton's petition for modification did not specifically raise the issue.[6] The issue was not raised before or considered by the family law master and his recommended decision did not address the issue. However in her petition to the circuit court to review the family law master's recommended decision, Mrs. Wharton argued that her basic needs will continue if Mr. Wharton were to die before her.

■ In *Prather v. Prather*, 172 W.Va. 348, 352, 305 S.E.2d 304, 309 (1983), we recognized that "in certain instances alimony may be made binding on a former spouse's estate."

While as a general rule alimony does not survive the death of the payor former spouse, where there are compelling equitable considerations which militate in favor of making alimony a charge against a deceased former spouse's es-

which to the Court may seem just and proper."

tate, the circuit court has the power to make such an award pursuant to the same authority which entitled a court of equity to modify any alimony award to reflect changed circumstances.

Syllabus Point 3, *Prather* quoting Syllabus Point 2 of *In re Estate of Hereford*, 162 W.Va. 477, 250 S.E.2d 45 (1978). *In Accord* Syllabus Point 1, *Matter of Estate of Weller*, 179 W.Va. 804, 374 S.E.2d 712 (1988). In *Prather*, we noted that "dictum in earlier West Virginia cases (citations omitted)" supported this view and that ·"[o]ur rule is widely followed. (Citations omitted)." *Prather*, 172 W.Va. at 352, 305 S.E.2d at 309.[7]

However, we require that "in order for alimony to be binding on an estate the divorce decree, or property settlement agreement if it is ratified or approved in the court decree, must specifically state that the obligation is binding on the estate. (Citations omitted)." *Prather* at 352–53, 305 S.E.2d at 309.

In *Estate of Weller*, we noted that the rule enunciated in *Prather* was codified in *West Virginia Code* 48–2–15(f) [1992].[8] We also recognize that "this statute is not retroactive with respect to alimony payments and is therefore not dispositive of the issue" in cases arising before the statute's effective date. *Estate of Weller*, 179 W.Va. at 806, 374 S.E.2d at 714. *See West Virginia Code* 48–2–36 [1984]. In *Estate of Weller*, we characterized Mrs. Weller's right to receive a sum certain over a specified period as "alimony in gross," which in

the absence of a contrary intention "vests on the date it is ordered and, in the event of the payor's death, the amount due becomes a charge upon the payor's estate." *Estate of Weller* at 808, 374 S.E.2d at 716. *See also Scott v. Wagoner*, 184 W.Va. 312, 400 S.E.2d 556 (1990) (holding that the circuit court had authority to enforce a child support obligation as a lien against the deceased obligor's estate).

In the present case, which is similar to *Estate of Weller*, the failure of the parties' 1971 divorce order to state the effect of the obligor's death on alimony payments is not dispositive of the issue. In *Estate of Hereford, supra*, the former wife was 71 years old, in a nursing home, bereft of all assets other than a small social security payment and "in dire and necessitous circumstances"; her former husband left no minor children in need of care and maintenance, left no close relatives (except his second wife) dependent on him for support and had a large estate and, finally, the claim for future alimony payments had been reduced to a reasonable sum certain. *Estate of Hereford*, 162 W.Va. at 486, 250 S.E.2d at 51. Although the facts of the present case are not as compelling, a similar picture is presented. Mrs. Wharton relies on her alimony payment to provide for her basic needs, and the record shows that she will continue to need some support if Mr. Wharton were to die before her.

Although we find that the evidence demonstrates that some support will be needed

---

7. Although most courts continue to terminate regular periodic alimony payment on the obligor spouse's death, several courts, including this Court, provide an exception to the rule. *See Matter of Estate of Jones*, 434 N.W.2d 130 (Iowa App.1988) (decree must clearly provide for continuation of alimony beyond husband's death); *Witt v. Witt*, 350 N.W.2d 380 (Minn.App.1984) (holding invalid an amendment made after the death of obligor, which required the payment of alimony from the obligor's estate); *Prim v. Prim*, 754 S.W.2d 609 (Tenn.1988) (holding survival of benefits must be specifically provided for). *But see Foskey v. Foskey*, 257 Ga. 736, 363 S.E.2d 547 (1988); *Clark v. Clark*, 782 S.W.2d 56 (Ky.App.1990) (holding statute terminating obligation to pay future maintenance applied to decree requiring payments for 20 years). *See also* Annot., 79 A.L.R.4th 10 (1990).

8. *West Virginia Code*, 48–2–15(f)[1992] states:

In every case where a separation agreement is the basis for an award of alimony, the court, in approving the agreement, shall examine the agreement to ascertain whether it clearly provides for alimony to continue beyond the death of the payor party or to cease in such event. *Where alimony is to be paid pursuant to the terms of a separation agreement which does not state whether the payment of alimony is to continue beyond the death of the payor party or is to cease, or where the parties have not entered into a separation agreement and alimony is to be awarded, the court shall specifically state as a part of its order whether such payments of alimony are to be continued beyond the death of the payor party or cease.* (Emphasis added).

by Mrs. Wharton, given the record we are unable to determine either how much support will be needed or the proper method for providing the support.[9] In *Cross v. Cross*, 178 W.Va. 563, 568, 363 S.E.2d 449, 454 (1987), we addressed a similar problem concerning the division of "retirement or pension benefits that have vested but not yet matured." In *Cross*, we refused to dictate any specific technique for distributing pensions "because each pension plan case presents a different set of problems" (*Id.* at 568, 363 S.E.2d at 454), but rather, we established broad guidelines to assist the trial courts in crafting systems to meet the individual requirements.

Following the general guidelines in *Cross*, when a court is required to provide for a former spouse's needs in anticipation of an obligor's death, "the court should be guided in the selection of a method of division by the desirability of disentangling parties from one another as quickly and cleanly as possible." Syllabus Point 5, in part, *Cross*.[10] Depending on the peculiar facts and circumstances, the court might require the obligor to establish a trust fund for the former spouse's needs, purchase insurance naming the former spouse as beneficiary, require a lump sum bequest to the former spouse, provide a lien on property or otherwise provide for the former spouse. However, "where there are compelling equitable considerations which militate in favor of making alimony a charge against a deceased former spouse's estate, the circuit court has the power to make such an award." Syllabus Point 2, in part, *Estate of Hereford, supra.*

In the case before us, the record does not demonstrate the level of Mrs. Wharton's need if Mr. Wharton dies before her, and the circuit court has not had an opportunity to devise an appropriate plan to meet the problem. Therefore, we remand with directions to hold a hearing and devise an appropriate plan that is consistent with these guidelines.

### III

Finally, Mrs. Wharton appeals the circuit court's denial of her attorney's fees and costs. *W.Va.Code*, 48–2–13(a)(4) [1992] states that "[t]he court may compel either party to pay attorney's fees and court costs reasonably necessary ... to prosecute or defend the action in the trial court." The record shows the parties' unequal financial situations and Mrs. Wharton's unemployment. Mrs. Wharton's situation is analogous to the situation found in *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990). In Syllabus Point 14, *Bettinger*, we said:

> The purpose of W.Va.Code, 48–2–13(a)(4) (1986), is to enable a spouse who does not have financial resources to obtain reimbursement for costs and attorney's fees [incurred] [sic] during the course of the litigation.

*In accord* Syllabus Point 6, *Charlton v. Charlton*, 186 W.Va. 670, 413 S.E.2d 911 (1991).

The record indicates that although Mrs. Wharton was not awarded attorney's fees and costs, the circuit court did consider the reasonableness of the requested fees by using the factors outlined in Syllabus Point 4, *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986). *See also, Burger v. Burger*, 176 W.Va. 416, 418, 345 S.E.2d 18, 20 (1986) (applying the

---

9. On remand the determination of Mrs. Wharton's resources should include the amount of Social Security that Mrs. Wharton will receive either based on her or Mr. Wharton's account.

10. Syllabus Point 5, *Cross, supra*, states:
    When a court is required to divide vested pension rights that have not yet matured as an incident to the equitable distribution of marital property at divorce, the court should be guided in the selection of a method of division by the desirability of disentangling parties from one another as quickly and cleanly as possible. Consequently, a court should look to the following methods of dividing pension rights in this descending order of preference unless peculiar facts and circumstances dictate otherwise: (1) lump sum payment through a cash settlement or off-set from other available marital assets; (2) payment over time of the present value of the pension rights at the time of divorce to the non-working spouse; (3) a court order requiring that the non-working spouse share in the benefits on a proportional basis when and if they mature.

same factors to determine the reasonableness of attorney's fee in a divorce action). The circuit court found that "this matter should have been completely disposed of so far as the attorneys are concerned within six months." Although we agree with the time concerns of the circuit court, the record indicates that at the time of the circuit court's order the lawyers for both parties spent about the same amount of time (55.25 hours for Mr. Wharton's lawyer and 49.5 hours for Mrs. Wharton's lawyer) and had similar per hour fees ($85.00 per hour for Mr. Wharton's lawyer and $75.00 per hour for Mrs. Wharton's lawyer). Although the circuit court has considerable discretion in awarding attorney's fees (*Somerville .v. Somerville*, 179 W.Va. 386, 391, 369 S.E.2d 459, 463 (1988)), given the discovery problems and the detailed financial information, we find that Mrs. Wharton's attorney's fees were reasonable and that the circuit court should have required Mr. Wharton to pay Mrs. Wharton's attorney's fees and costs.

For the above stated reasons, the judgment of the Circuit Court of Nicholas County is reversed and the case is remanded for proceedings consistent with this opinion.

Reversed and Remanded.