441 S.E.2d 395

**Douglass T. COOL, Plaintiff Below, Appellee,**

v.

**Elsie L. COOL, Defendant Below, Appellant.**

**No. 21773.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 1994.

Decided Feb. 18, 1994.

Douglass T. Cool, pro se.

Robert D. Campbell, Richardson & Richardson, Parkersburg, for appellant.

PER CURIAM:

Elsie L. Cool, the defendant below and appellant, contends that the family law mas-

ter (master) and the circuit court erred when they refused to set aside a written separation agreement. She contends that it should have been done when one of the agreement's key provisions became unenforceable. This provision was to the effect that the wife's aunt would take over the marital home and assume the payment of two deeds of trust that had been placed on the property. The wife agreed to be secondarily liable on the payments and to save the husband harmless on the home loans. The wife also was to be liable for the maintenance, improvements, and utilities of the home.[1] Before the final hearing, the aunt decided she did not wish to purchase the property. There was no testimony taken from the aunt as to why she decided not to assume the property.

In July of 1989, the husband instituted divorce proceedings in the Circuit Court of Wood County on grounds of irreconcilable differences, which the wife admitted in her answer. The parties entered into a written separation agreement on September 27, 1991. The agreement provided for the distribution of the marital assets, custody of the minor child, child support, and waiver of alimony. The agreement also contained the aforementioned language with regard to the marital home.

This agreement was entered into the record at a hearing before the master on October 29, 1991. The wife was represented by counsel and the husband appeared pro se. The parties appeared to be satisfied with the agreement as no objections were made to its admission.[2]

As earlier noted, the aunt refused to accept the conveyance of the property and the liability on the deeds of trust. At the final hearing conducted on March 3, 1992, the wife, now appearing pro se, objected to having the agreement approved. She expressed her belief that because her aunt no longer wanted the home, the entire agreement was void.

The evidence at this hearing indicates that the home has a second deed of trust and that the amount of the debt might equal the value of the house. This fact may have accounted for the aunt's refusal to accept the property and the obligation to pay off the deeds of trust. The evidence also revealed that the master discussed the real estate problem at some length with the parties. The wife and the parties' daughter, who was sixteen years old at the time of the March, 1992, hearing, were living in the house.

The master concluded that in view of all the circumstances, the wife and daughter should continue to live in the house until the daughter turned eighteen, at which time the house would be appraised and sold. The proceeds then would be used to pay off the deeds of trust and the costs of the sale. If any proceeds were left, the wife could be credited with the excess mortgage payments she had made.[3] Any remaining funds would then be divided equally. In the interim, each party was to pay one-half of the mortgage payments and one-half of the cost of any repairs.

After this hearing, the wife wrote a letter saying that she wanted the agreement set aside due to the aunt's failure to take the

---

1. The precise language of this provision is:

   "The husband and wife agree to immediately deed all their right, title and interest in the last marital home at 600 Grandview Street, Parkersburg, W.Va., to Mary Jo Barker, the wife's Aunt. Mary Jo Barker has agreed to assume all mortgage debt on this property and the wife agrees to be secondarily liable for any payments related thereto, saving the husband harmless therefrom, should Mary Jo Barker default in any manner. The wife agrees to assist in any manner in removing the husband from any liability for the mortgage loan on this property, but, if the lenders will not do so, she still will be solely liable for the mortgage payment on this property, in the event of any default by her Aunt. The wife will also be solely liable for any maintenance, improvements and utilities at this property."

2. The wife asserts that she and her husband were under duress when the agreement was executed. However, the wife was represented by counsel when the agreement was negotiated. No allegations of fraud or duress were raised until after her aunt refused to accept liability on the mortgage.

3. It appears that the wife had been making more than her share of the mortgage payments. She worked for the Bureau of Public Debt in Parkersburg. Her husband was employed as a general laborer and had periods where he was unemployed.

house. On review, the circuit court by order dated July 1, 1992, affirmed and adopted the recommended order of the master. The wife's sole assignment of error is that the failure of her aunt to purchase the parties' home as called for in the agreement rendered it void.

Under W.Va.Code, 48–2–32(b) (1984), when the parties to a divorce action have executed a separation agreement, marital property is to be divided in accordance with the terms of the agreement, unless the court finds:

"(1) That the agreement was obtained by fraud, duress, or other unconscionable conduct by one of the parties, or

"(2) That the parties, in the separation agreement, have not expressed themselves in terms which, if incorporated into a judicial order, would be enforceable by a court in future proceedings, or

"(3) That the agreement, viewed in the context of the actual contributions of the respective parties to the net value of the marital property of the parties, is so inequitable as to defeat the purposes of this section, and such agreement was inequitable at the time the same was executed."

The agreement at issue in this case was written and signed by both parties. It appeared to be entered into freely without evidence of fraud, duress, or coercion. The problem arose when the wife's aunt later refused to proceed under the provision concerning the conveyance of the home. As earlier indicated, the master did conduct an inquiry to determine what should be done with regard to the house and its incumbent debt. There was no claim advanced by the wife that any other provisions of the agreement were unfair.

Basically, the master was confronted with a situation where the property had two deeds of trust that caused it to have little, if any, equity. The master determined that the only viable solution was to allow the wife and the daughter to live in the house until the daughter reached eighteen, with both parties sharing the mortgage expense and repairs.[4]

Upon the sale of the house, the debt was to be discharged and the wife reimbursed for additional mortgage expense paid. If there were any net proceeds, they would be equally divided. This arrangement was confirmed by the circuit court.

■ Neither at the final hearing nor on this appeal does the wife advance any specific facts that make the remaining portion of the agreement unfair. Nor are there any facts advanced that would indicate the master or judge could have solved the house problem in a more equitable manner. Consequently, we cannot state that the circuit court's order was clearly wrong nor against the weight of the evidence, which has been our traditional rule for reviewing these matters on appeal. As reflected in Syllabus Point 1 of *Wharton v. Wharton*, 188 W.Va. 399, 424 S.E.2d 744 (1992):

" ' "In a divorce suit the finding of fact of a trial chancellor based on conflicting evidence will not be disturbed on appeal unless it is clearly wrong or against the preponderance of the evidence." Syllabus Point 1, *Marcum v. Browning*, [171] W.Va. [5], 297 S.E.2d 204 [ (1982) ]; Syllabus, *Waller v. Waller*, 166 W.Va. 142, 272 S.E.2d 671 (1980); Syllabus Point 4, *Belcher v. Belcher*, 151 W.Va. 274, 151 S.E.2d 635 (1966); Syllabus Point 3, *Taylor v. Taylor*, 128 W.Va. 198, 36 S.E.2d 601 (1945). Syllabus, *Fizer v. Fizer*, [172] W.Va. [704], 310 S.E.2d 465 (1983).' Syllabus Point 3, *Shank v. Shank*, 182 W.Va. 271, 387 S.E.2d 325 (1989)."

For the foregoing reasons, we affirm the judgment of the Circuit Court of Wood County.

Affirmed.

---

4. The wife at the March, 1992, hearing indicated that she was in the process of finding another house.